**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

MARY E. EDMONDSON
13811 King Gregory Way, Unit 123
Upper Marlboro, MD 20772
Plaintiff,

v.

EAGLE NATIONAL BANK
3 Dickinson Drive
Chadds Ford, PA 19317
and
8045 West Chester Pike
Upper Darby, PA 19082

EAGLE NATIONWIDE MORTGAGE
COMPANY
789 East Lancaster Avenue, Suite 201
Villanova, PA 19085
and
8045 West Chester Pike
Upper Darby, PA 19082

EAGLE NATIONAL BANCORP, INC.
8045 West Chester Pike
Upper Darby, PA 19082

ESSA BANCORP, INC.
200 Palmer Street
Stroudsburg, PA 18360

ESSA BANK & TRUST
200 Palmer Street
Stroudsburg, PA 18360

Defendants.

Civil Action No.:

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Mary E. Edmondson, Class Plaintiff, on behalf of herself and on behalf of the

entire class of persons similarly situated, by and through her attorneys, Michael Paul Smith,

Sarah A. Zadrozny of Smith, Gildea & Schmidt, LLC and Timothy F. Maloney, Veronica B. Nannis and Timothy L. Creed of Joseph, Greenwald and Laake, PA as co-counsel hereby file this Class Action Complaint and state as follows:

## <u>INTRODUCTION</u>

1.    Plaintiff is a borrower who currently has or had a federally related mortgage loan originated and/or serviced by Defendants Eagle National Bank and/or Eagle Nationwide Mortgage Company and/or Eagle National Bancorp, Inc. and/or ESSA Bank & Trust and/or ESSA Bancorp, Inc. ("Eagle Defendants"), which were or are secured by Plaintiff's residential real property.  For the purposes of procuring title insurance and to facilitate the escrow and settlement process, Plaintiff used Genuine Title, LLC as a result of the Eagle Defendants' referral thereto.

2.    Plaintiff and Class Members were victims of an illegal kickback scheme whereby the Eagle Defendants received unearned fees and kickbacks from Genuine Title, LLC, Brandon Glickstein, Inc., and/or Competitive Advantage Media Group, LLC in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA").

3.    Genuine Title, LLC, Brandon Glickstein, Inc., and/or Competitive Advantage Media Group, LLC provided leads, postage, and/or free marketing materials/credits, as well as hundreds of thousands of dollars to referring mortgage brokers, loan officers, agents, and/or employees employed by Eagle Defendants from 2009 to 2014.  These kickbacks were paid pursuant to an agreement in exchange for referrals and neither the Eagle Defendants nor any of the brokers, agents, and/or employees receiving the kickbacks performed any settlement services associated with the kickbacks.  These payments were concealed by the Eagle Defendants and Genuine Title from Plaintiff and Class Members

and were omitted from Plaintiff and Class Members' HUD-1s or other required loan documents in an effort to hide the kickbacks from Plaintiff and Class Members.   In addition, the Eagle Defendants and their mortgage brokers, loan officers, agents, and/or employees concealed the kickbacks through an elaborate payment system by difficult to trace free marketing materials, postage, and/or leads or payments being made from CAM or some other person or entity other than Genuine Title as well as the payments being received by people and/or companies that were designed to conceal the kickbacks.

## **PARTIES**

4.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 as a class action on her own behalf and on behalf of the entire class of people similarly situated.

5.     Plaintiff Mary E. Edmondson is a resident of Prince Georges County, Maryland.

6.     Defendant Eagle National Bank is and/or was a national banking association based in the State of Pennsylvania. During the relevant time frame, Eagle National Bank through its wholly owned subsidiary Eagle Nationwide Mortgage Company was engaged in the business of consumer mortgage brokering and/or lending and/or otherwise transacted business in Maryland and elsewhere.

7.     Defendant Eagle Nationwide Mortgage Company is and/or was a Pennsylvania corporation and is and/or was a wholly owned subsidiary of Eagle National Bank and is and/or was engaged in the business of consumer mortgage brokering and/or lending and/or otherwise transacted business in Maryland and elsewhere.

8.     Defendant Eagle National Bancorp, Inc. is a Pennsylvania corporation and the holding company of Defendants Eagle National Bank and Eagle Nationwide Mortgage Company.

9.    Defendant ESSA Bancorp, Inc. is a Pennsylvania corporation and the holding company of Defendant ESSA Bank & Trust.   According to public filings, Defendant ESSA Bancorp, Inc. acquired Eagle National Bancorp, Inc., including Eagle National Bank and its wholly owned subsidiary Eagle Nationwide Mortgage Company, by a merger completed on December 4, 2015 and pursuant to a Plan of Merger filed with the Securities Exchange Commission on July 28, 2015.   Specifically, Section 2.01 of the Plan of Merger states:

> (b) *The Second Merger.*   Immediately following the Merger, EN Bancorp will merge with and into ESSA Bancorp, with ESSA Bancorp as the surviving entity. The separate existence of EN Bancorp shall cease, and all of the property (real, personal and mixed), rights, powers and duties and obligations of EN Bancorp shall be transferred to and assumed by ESSA Bancorp as the surviving entity in the Second Merger, without further act or deed, all in accordance with the PBCL. . . .

> (c) *The Bank Merger.*   Immediately following the Second Merger, Eagle Bank shall merge with and into ESSA Bank, with ESSA Bank as the surviving entity pursuant to the Bank Merger Agreement substantially in the form of Exhibit B hereto. The directors and officers of ESSA Bank immediately prior to the Bank Merger Effective Date shall be the initial directors and officers of the surviving entity, in each case until their respective successors are duly elected or appointed and qualified. . . .

10.   Defendant ESSA Bank & Trust is a Pennsylvania chartered stock savings bank and upon information and belief is the successor-in-interest to Eagle National Bank.

4

11.     According to public filings, as a result of the merger, ESSA Bancorp, Inc. and ESSA

Bank & Trust are liable for all the debts, liabilities, and obligations of Defendants Eagle

National Bancorp, Inc., Eagle National Bank, and Eagle Nationwide Mortgage Company,

in accordance with 15 Pa. C.S. §336 and the terms of the Merger.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13.     This Court has personal jurisdiction over the parties. Personal jurisdiction over Defendant

Eagle National Bank, Eagle Nationwide Mortgage Company, and Eagle National

Bancorp Inc. is appropriate because these Defendants transacted business in Maryland,

and such jurisdiction extends to Defendant ESSA Bank & Trust as the successor entity.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part

of the events or omissions giving rise to the claims occurred within this District and the

Eagle Defendants systematically and continually transacted business in this District

during the applicable time period.

## FACTUAL ALLEGATIONS FOR INDIVIDUAL AND CLASS RELIEF

15.     Congress enacted RESPA in 1974 as a response to the abuses in the real estate settlement

process. Congress found that kickbacks and unearned fees in the settlement process

resulted in unnecessarily high settlement charges.

16.     12 U.S.C. § 2607 states in relevant part:

> (a) Business Referrals. No person shall give and no person shall accept
> any fee, kickback, or thing of value pursuant to any agreement or
> understanding, oral or otherwise, that business incident to or a part of a
> real estate settlement service involving a federally related mortgage
> loan shall be referred to any person.
> (b) Splitting charges. No person shall give and no person shall accept any
> portion, split or percentage of any charge made or received for the
> rendering of a real estate settlement service in connection with a

transaction involving federally related mortgage loan other than for services actually performed.

17.   12 U.S.C. § 2607(d)(2) states in relevant part:

> Any person or persons who violate the prohibitions or limitations of [12 USC § 2607] shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

18.   The purpose of 12 U.S.C. § 2607 is to eliminate payment of unearned fees in connection with settlement services provided in federally related mortgage transactions, to protect consumers from unnecessarily high settlement charges caused by certain abusive practices, and to protect against other harms to consumers resulting from coordinated business relationships for settlement services.  *See* 12 U.S.C. § 2601.

19.   Genuine Title is, and was at all times relevant hereto, a title services company, licensed under the laws of various states, including Maryland, and regulated by the Maryland Insurance Commissioner.

20.   At all relevant times, the Eagle Defendants' employees and/or agents were licensed mortgage brokers and/or authorized loan officers (collectively referred to herein as "Referring Brokers"), and at all relevant times were acting within scope of the business relationship and duties of their employment on behalf of the Eagle Defendants, specifically seeking borrowers and securing loans for residential mortgages through the Eagle Defendants and/or brokering such loans through the Eagle Defendants to other lenders with whom the Eagle Defendants authorized ("Eagle Borrowers"), referring borrowers to title companies, and working with title companies to close these loans.  All activities, including the Referring Brokers' interaction with Genuine Title, were for the benefit of the Eagle Defendants.

21.     In connection with the real estate settlements involved herein, the Eagle Defendants'
        employees and/or agents received and accepted cash payments, free marketing materials,
        and other things of value from Genuine Title, Brandon Glickstein, Inc., and/or
        Competitive Advantage Media Group, LLC in exchange for referrals of borrowers to
        Genuine Title for title and settlement services.

**The Kickback Scheme**

22.     Genuine Title and the Eagle Defendants through Referring Brokers created an elaborate
        scheme to disguise the kickbacks and the Kickback Scheme from Plaintiff, Class
        Members, and regulators.

23.     Brandon Glickstein, Inc. and Competitive Advantage Media Group, LLC are sham
        marketing companies formed by principals of Genuine Title (collectively referred to as
        "Genuine Sham Marketing Companies"). Plaintiff believes, and therefore avers, that
        these companies were formed primarily, if not, at least in part, to facilitate illegal
        payments and other things of value kickbacks to Referring Brokers employed by the
        Eagle Defendants to compensate them for referring settlements to Genuine Title.

24.     Upon information and belief, the use of the Genuine Sham Marketing Companies was
        intended to conceal, and did conceal, the Kickback Scheme from borrowers, including
        Plaintiff, Class Members, and regulators.

25.     In or about 2006, Brandon Glickstein, Genuine Title's lead marketing and account
        representative, formed Brandon Glickstein, Inc. (hereinafter "BGI") for the purpose of
        "advertising and marketing and to engage in any other lawful purpose and business." *See*
        relevant SDAT Records, attached hereto as **Exhibit 1**.

26.     BGI was one of the conduits through which Genuine Title made Referring Cash payments to Referring Brokers.  From 2009 to 2013, Genuine Title paid BGI more than $4,000,000, a portion of which was paid to Referring Brokers in exchange for referrals of borrowers to Genuine Title.  The Referring Cash payments varied month to month based on volume of settlements generated by the Referring Brokers.

27.     On or about May 21, 2009, Brandon Glickstein formed another company, Competitive Advantage Media Group, LLC (hereinafter "CAM"). The Resident Agent for CAM at the time of organization was Jonathan S. Bach, Esq., the in-house attorney for Genuine Title. Additionally, the address for CAM was the same physical address of Genuine Title. On or about May 13, 2013, CAM changed its Resident Agent and Resident Agent's address to Michael N. Mercurio at 8171 Maple Lawn Boulevard, Suite 200, Fulton, Maryland 20759. *See* relevant SDAT Records, attached hereto as **Exhibit 2.**

28.     While in operation, CAM provided marketing services, including but not limited to supplying free or discounted leads, postage, and/or marketing materials and services and/or credits for mortgage brokers and lenders, including Referring Brokers at the Eagle Defendants (hereinafter "Free Marketing Materials").  These services would include designing the copy for the mailers that were being sent out on behalf of the Eagle Defendants, the culling and selecting the highest value leads to send mail that would most closely match the mortgage products and programs that the Eagle Defendants would be featuring, and payment for sales leads.  *See* sample marketing materials, attached hereto as **Exhibit 3**.  Either CAM or Genuine Title would pay the cost of the printing.  *See* sample CAM check to Capital Mailing Services with memo "Eagle Nationwide rev

09/10/09", attached hereto as **Exhibit 4**; sample of Genuine Title checks to CMS, attached hereto as **Exhibit 5**.

29.    As part of and in furtherance of the kickback scheme, Genuine Title paid for Free Marketing Materials produced by CAM by doing the following: Genuine Title would inform CAM of how many settlements each Referring Broker referred to Genuine Title the previous month, and then CAM would have Genuine Title pay CAM an amount which corresponded to the amount the Referring Broker earned in Free Marketing Materials for that month.  For example, if a Referring Broker who used CAM for his or her marketing materials referred five (5) mortgages that closed with Genuine Title in one month, and the agreement with Genuine Title was that each closing was valued at $200, Genuine Title would pay CAM $1,000 the next month to be applied to the Referring Broker's marketing materials produced by CAM and the Eagle Defendants and/or the Referring Broker would simply pay for the cost of any materials purchased which exceed the kickback.

30.    Upon information and belief, this system was used to conceal by all parties, and did so conceal, the Kickback Scheme from borrowers, including Plaintiff and other Class Members, and regulators.

31.    The Free Marketing Materials were provided as a quid pro quo, and pursuant to and with an understanding and agreement that the Referring Brokers receiving the Free Marketing Materials would refer borrowers to Genuine Title for real estate title and settlement services, including performing a title search and procuring title insurance.

32. Not only did Genuine Title and the Genuine Sham Marketing Companies provide Referring Brokers with Free Marketing Materials, but Genuine Title also paid cash directly to the Referring Brokers in exchange for referrals (hereinafter "Referring Cash").

33. The payments varied in amount, and upon information and belief, correlate to the volume of referrals to Genuine Title by the Referring Brokers.

34. The payment and receipt of Referring Cash was concealed and not disclosed on borrowers' HUD-1s, including the HUD-1s of Plaintiff and other Class Members. Plaintiff believes and therefore avers, the Referring Cash was not disclosed on borrowers' HUD-1s in order to conceal, and did in fact conceal, the Kickback Scheme from borrowers, including Plaintiff and other Class Members, and regulators.

35. In order to disguise and conceal receipt of Referring Cash payments, some Referring Brokers created shell companies to receive the Referring Cash payments. The shell companies had no business purpose except to serve as a conduit for the Referring Cash Payments. Other Referring Brokers used existing companies that they may have had to receive the Referring Cash Payments.  In either situation, the Referring Cash payments were solely for the purpose of the referral agreement and in furtherance of the Kickback Scheme.

36. Plaintiff believes and therefore avers, Referring Cash Payments were made and received in this way to conceal, and did conceal, the Kickback Scheme from borrowers, including Plaintiff and other Class Members, and regulators.

37. When regulators began to investigate Genuine Title around October 2013, Genuine Title drafted sham Title Services Agreements for Referring Brokers with the intent to disguise and conceal Referring Cash payments as legitimate fees for alleged title services provided

by Referring Brokers, and Genuine Title back-dated said agreements. However, the Referring Cash payments were not made in accordance with the fee schedule in the Title Services Agreements and the Referring Brokers performed no services for Genuine Title. *See* example Sham Title Services Agreements, attached hereto as **Exhibit 6**.

38.     Upon information and belief, the Sham Title Services Agreements were used to conceal, and did so conceal, the Kickback Scheme from borrowers, including Plaintiff and other Class Members, and regulators.

39.     While Genuine Title would have preferred to compete by providing lower pricing of its title and settlement services to borrowers instead of paying Free Marketing Materials and/or Referring Cash, the payment of Free Marketing Materials and Referring Cash was the more effective way to increase Genuine Title's market share in the title and settlement services market, even though it was prohibited by law.  *See* Jay Zukerberg 5/20/16 Aff., attached hereto as **Exhibit 7**.

40.     Plaintiff was charged for settlement services related to her federally related mortgage by Genuine Title while the Eagle Defendants were engaging in the Kickback Scheme.

41.     As a result of the Kickback Scheme, Plaintiff paid a portion of the cost of the Free Marketing Materials and/or Referring Cash out of the title and settlement costs charged.

42.     The Eagle Defendants and their Referring Brokers, agents, and/or employees provided no title services associated with the receipt of the Free Marketing Materials and/or Referring Cash.

43.     The payment by Genuine Title and acceptance by the Eagle Defendants of the Free Marketing Materials and/or Referring Cash were solely for the referral of borrowers to Genuine Title.

44.     As a result of the Kickback Scheme, Plaintiff was deprived of kickback-free settlement services and impartial and fair competition, as required by 12 U.S.C. § 2607, and as a result paid higher settlement charges.

45.     Plaintiff paid more for her settlement services because the Eagle Defendants' Referring Brokers performed no services in exchange for the kickbacks paid and kickbacks were paid instead of lower charges to the consumers.

## FACTS FOR INDIVIDUAL CLASS REPRESENTATIVE

46.     Plaintiff in this case was a victim of the Kickback Scheme as described in the above-stated paragraphs.

47.     Plaintiff acted reasonably and diligently.  Plaintiff did not and could not have known about the Kickback Scheme, due to Genuine Title and the Eagle Defendants' efforts to conceal the kickbacks from Plaintiff, Class Members, and regulators, until contacted by undersigned counsel on or about April 20, 2016.

48.     The transactions of the Plaintiff and the course of events thereafter exemplify the working of the Kickback Scheme, and are typical of the transactions involving all members of the proposed class.

**Eagle National Bank, Eagle Nationwide Mortgage Company, Eagle National Bancorp, Inc., ESSA Bancorp, Inc., and ESSA Bank & Trust**

49.     Beginning in 2009, and upon information and belief, continuing until on or about early 2014 based upon Genuine Title and the Eagle Defendants' continuing pattern of practice, licensed mortgage brokers employed by the Eagle Defendants received Referring Cash and Free Marketing Materials from Genuine Title and/or the Genuine Sham Marketing Companies in exchange for referrals of Eagle National borrowers to Genuine Title for settlement services.  This pattern and practice is consistent with Genuine Title's business

plan to obtain referrals by the paying of Kickbacks as further outlined in the related case *Fangman, et al v. Genuine Title, LLC, et al.*, Case No. 1:14-cv-00081-RDB.

50.     In exchange for referrals, Genuine Title provided Referring Cash and/or Free Marketing Materials to the Eagle Defendants' Referring Brokers in violation of RESPA.

51.     During the relevant time period, Adam Mandelberg, Gary Klopp, Angela Pobletts, Jim Kniest, John Hauck, Bret Springer, and John Klimchak were employed by the Eagle Defendants as branch managers.

52.     From 2009 to 2011, Gary Klopp, a branch manager at the Eagle Defendants' Owings Mills, Maryland branch, created Carroll Abstracts, Inc. The resident agent of said Maryland Corporation was Jonathan S. Bach, Esq., Genuine Title's Title Attorney. During Mr. Klopp's employment with the Eagle Defendants, Genuine Title paid hundreds of thousands of dollars in kickbacks for the referral of Eagle Borrowers from the Eagle branch managed by Mr. Klopp.  *See* Jay Zukerberg 3/28/16 Aff., Ex. 2, attached hereto as **Exhibit 8**.

53.     In 2010-2011, Adam Mandelberg, a branch manager at the Eagle Defendants' Bel Air and Owings Mills, Maryland branches, owned a company known as R&R Marketing Group. During Mr. Mandelberg's employment with the Eagle Defendants, Genuine Title paid tens of thousands of dollars in kickbacks for the referral of Eagle Borrowers from the Eagle branch managed by Mr. Mandelberg.  *See* Jay Zukerberg 3/28/16 Aff., Ex. 1, attached hereto as **Exhibit 8**.

54.     In 2010, Angela Pobletts, a branch manager at the Eagle Defendants' Bel Air, Maryland branch, created MARC, LLC.  During Ms. Pobletts' employment with the Eagle Defendants, Genuine Title paid approximately $15,000.00 in Referring Cash in 2010 for

referrals from the Eagle branch managed by Ms. Pobletts.  *See* Jay Zukerberg 3/28/16 Aff., Ex. 3, attached hereto as **Exhibit 8**.

55.     R&R Marketing, LLC, Carroll Abstracts, Inc., and MARC, LLC were sham companies created by, or used by, branch managers Mandelberg, Klopp, and Pobletts for the purpose of disguising illegal kickbacks as legitimate payments for title services when, in fact, they were not providing any material work or settlement services for Genuine Title.

56.     From December 2008to December 2010, Jim Kniest was a branch manager employed by the Eagle Defendants.  Mr. Kniest managed a branch for the Eagle Defendants in San Diego, California.  Genuine Title through CAM paid illegal kickbacks for all of the referrals received from the Eagle Defendants' branch managed by Mr. Kniest during the period of the time that Mr. Kniest was employed by the Eagle Defendants.  *See* Brandon Glickstein Deposition excerpt, attached hereto as **Exhibit 9**, at pp. 61-62.

57.     From June 2009 to March 2011, Bret Springer was a branch manager and employed by the Eagle Defendants at the Forest Hill branch.  Genuine Title provided illegal kickbacks in the form of Referring Cash and/or Free Marketing Materials in exchange for all referrals from the Eagle Branch managed by Mr. Springer. *See* Brandon Glickstein Deposition excerpt, attached hereto as **Exhibit 9,** at pp. 62-63.

58.     From February 2008 to February 2011, John Klimchak was employed by the Eagle Defendants and managed their branch located in Pittsburgh, Pennsylvania.  Plaintiff believes and avers that all Eagle Borrowers referred by the Eagle Defendants' branch managed by Mr. Klimchak were referred pursuant to an illegal kickback agreement where Referring Cash or Free Marketing Materials were paid in exchange for referrals of

borrowers to Genuine Title.  *See* Brandon Glickstein Deposition excerpt, attached hereto as **Exhibit 9**.

59.  Plaintiff believes and therefore avers, and based upon a continuing pattern of practice, in addition to the foregoing Referring Brokers, other currently known or unknown branch managers, brokers, agents and/or other employees employed by the Eagle Defendants participated in  the Kickback Scheme.

60.  In or about August 2010, Plaintiff Mary E. Edmondson obtained a residential mortgage from Eagle Nationwide Mortgage Company through Adam Mandelberg in relation to the refinancing of her home.

61.  The Eagle Defendants, including Eagle Nationwide Mortgage Company, referred Plaintiff Edmondson to Genuine Title for title and settlement services.  On the basis of this referral, Plaintiff Edmondson used Genuine Title for title and settlement services and settled on August 19, 2010.   Plaintiff Edmondson paid Genuine Title for title and settlement services.

62.  Eagle Nationwide Mortgage Company referred Plaintiff Edmondson to Genuine Title for title and settlement services in accordance with Genuine Title and Eagle Nationwide Mortgage Company brokers' agreement that the Eagle Defendants through its branch managers, brokers, loan officers and/or employees would receive Free Marketing Materials and/or Referring Cash as quid pro quo for referrals to Genuine Title.

63.  The kickbacks were concealed from Plaintiff by the Eagle Defendants and Genuine Title and were omitted from Plaintiff's HUD-1 settlement statement and other required loan documents in an effort to conceal the kickbacks from Plaintiff.

64.     Plaintiff Edmondson paid Genuine Title for those title and settlement services.  A portion

of that payment was illegally split and shared with the Eagle Defendants through the

payment of the illegal kickbacks through branch manager Adam Mandelberg, her

Referring Broker.

65.     As a direct and proximate cause of the actions of the Eagle Defendants, Plaintiff

Edmondson and other Class Members were deprived of impartial and fair competition

between settlement service providers in violation of RESPA and was forced to pay more

for said settlement services.

## CLASS ACTION ALLEGATIONS

66.     The allegations in the above stated paragraphs are incorporated by reference as if fully

restated herein.

67.     Class definition:

> All individuals in the United States who were borrowers on a federally
> related mortgage loan (as defined under the Real Estate Settlement
> Procedures Act, 12 U.S.C. § 2602) from, or originated by, Eagle National
> Bank or Eagle Nationwide Mortgage Company for which Genuine Title
> provided a settlement service, as identified in Section 1100 on the HUD-
> 1, between January 1, 2009, and December 31, 2014.  Exempted from
> this class is any person who, during the period of January 1, 2009 through
> December 31, 2014, was an employee, officer, member and/or agent of
> Defendants Eagle National Bank, Eagle Nationwide Mortgage Company,
> ESSA Bank & Trust, Genuine Title LLC, Brandon Glickstein, Inc.,
> and/or Competitive Advantage Media Group LLC.

68.     The Plaintiff and Class Members are borrowers who obtained federally-related residential

mortgage, refinance, and/or reverse mortgage loans from, or originated by, the Eagle

Defendants and were referred to and retained Genuine Title for settlement and title

services in connection with those transactions from 2009 to 2014.

69.  The Plaintiff brings this action on behalf of herself and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

70.  The questions of law and fact in this action are common to all members of the Class.

71.  There are questions of law and fact that are not only common to the Class, but also predominate over any question affecting only individual Class members.   The predominating questions include, but are not limited to:

   a.  Whether the Eagle Defendants and their agents and/or representatives received unearned fees and illegal kickbacks from Genuine Title and/or the Genuine Sham Marketing Companies for referral of business to Genuine Title;

   b.  Whether payments to the Eagle Defendants and their agents and/or representatives violated RESPA;

   c.  Whether Plaintiff and Class Members were forced to pay more for said settlement services;

   d.  Whether the Eagle Defendants actively concealed the Kickback Scheme to avoid detection by Plaintiff and Class Members;

   e.  Whether the Plaintiff and the Class are entitled to treble damages under RESPA;

   f.  Whether the Plaintiff and the Class are entitled to attorneys' fees and expenses under RESPA;

   g.  Whether Genuine Title failed to disclose and concealed to Plaintiff and Class Members that Genuine Title was participating with referring loan officers/banks and Genuine Sham Marketing Companies and failed to disclose and concealed their affiliated business relationships among other things; and

h.   Whether despite exercising reasonable due diligence, the Plaintiff and Class Members did not and could not have learned of the illegal kickbacks until contacted by counsel.

72.   The claims of the Plaintiff are typical of the claims or defenses of the respective Class Members.

73.   The Plaintiff/Class Representative will fairly and adequately protect the interests of the Class. The interests of the named and all other members of the Class are identical.

74.   Plaintiff's counsel has substantial experience in complex litigation and class action proceedings and will adequately represent the Class's interests.

75.   The Class consists, upon information and belief, of over 1,200 individuals, and thus are so numerous that joinder of all members is impracticable.

76.   Separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Eagle Defendants.

77.   This action entails questions of law and fact common to Class Members that predominate over any questions affecting only individual Plaintiffs, and, therefore, a class action is superior to other available methods of fair and efficient adjudication of this litigation.

78.   Most members of the Class are unaware of their rights to prosecute a claim against Defendants.

79.   No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but if he or she does, he or she may exclude himself or herself from the class upon the receipt of notice under Fed. R. Civ. P. 23(c).

## COUNT I
## Violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607(a) and (b)

80.   Plaintiff incorporates the above stated paragraphs as if restated herein.

81.   All transactions at issue in the instant complaint are incident to or part of real estate settlement services involving federally related mortgage loans and thereby are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

82.   As a title service provider, Genuine Title is subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

83.   As lenders and/or brokers and/or servicers of federally related mortgage loans, the Eagle Defendants are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*

84.   Genuine Title and/or the Genuine Sham Marketing Companies paid the Eagle Defendants Referring Cash and/or provided Free Marketing Materials and/or things of value in exchange for referrals of business to Genuine Title in violation of RESPA, 12. U.S.C. § 2607(a) and (b).

85.   The Eagle Defendants by and through their brokers, agents, and/or employees received Free Marketing Materials and/or Referring Cash and/or things of value for referrals of business as part of real estate settlement services provided to Plaintiff and Class members, in violation of RESPA, 12 U.S.C. § 2607(a) and (b).

86.   All loans referred to Genuine Title as part of the Kickback Scheme were secured by first or subordinate liens on residential real property and were made in whole or in part by the Eagle Defendants and/or their affiliates whose deposits or accounts are insured by the Federal Government and/or who is regulated by an agency of the Federal Government.

87.     The payment and/or arranging of payment of kickbacks to the Eagle Defendants by Genuine Title and/or the Genuine Sham Marketing Companies and the Eagle Defendants' receipt thereof constituted a violation of § 8(a) of RESPA, which prohibits the payment of referral fees or kickbacks in connection with the origination of federally-related mortgage loans.

88.     The kickbacks paid by Genuine Title and/or the Genuine Sham Marketing Companies to the Eagle Defendants were also made solely for the purpose of Genuine Title receiving referrals, and no services were actually performed by the Eagle Defendants in connection with these payments and/or materials, in violation of 12 U.S.C. § 2607(b), which prohibits the splitting of fees in connection with the origination of federal related mortgage loans.

89.     Genuine Title and the Eagle Defendants actively concealed the kickbacks paid to Referring Brokers from Plaintiff and Class Members by refusing to list the kickbacks on Plaintiff and Class Members' HUD-1 settlement statements and settlement documents, and failed and refused to disclose their affiliated business arrangement and by engaging in an elaborate payment scheme to conceal the illegal kickbacks.

90.     Despite exercising due diligence, the Plaintiff and Class Members did not and could not have known about the Kickback Scheme until contacted by undersigned counsel.

91.     As a direct and proximate cause of Genuine Title's actions, the Plaintiff and Class Members used Genuine Title for title and settlement services, paid for said services and were deprived of impartial and fair competition and the costs paid by Plaintiff and Class Members to Genuine Title for settlement services would have been lower.

WHEREFORE:

    a.   Plaintiff respectfully demands this Court to certify this class action pursuant to Federal Rule of Civil Procedure 23 and set this matter for trial; and

    b.   Demand judgment for Plaintiff and Members of this Class against the Eagle Defendants and award the Plaintiff and Class Members an amount equal to:

        1.   Treble damages for settlement services charged by Genuine Title, including, but not limited to, title insurance premiums, in an amount equal to three times the amount of any charge paid for such settlement services, pursuant to 12 U.S.C. § 2607(d)(2);

        2.   Reasonable attorneys' fees, interest and costs pursuant to 12 U.S.C. § 2607(d)(5); and

        3.   Such other and further relief as this Court deems proper.

Respectfully submitted,

_____/s/_____
Timothy F. Maloney, Esq. #03381
Veronica B. Nannis, Esq. #15679
Timothy L. Creed, Esq. #19364
Joseph, Greenwald & Laake
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 / (301) 220-1214 (fax)
Email: tmaloney@jgllaw.com
vnannis@jgllaw.com
tcreed@jgllaw.com
*Co-Counsel for Plaintiff and Class Members*

_____/s/_____
Michael Paul Smith, Esq. #23685
Sarah A. Zadrozny, Esq. #13911
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, MD 21202
(410) 821-0070 / (410) 821-0071 (fax)
Email: mpsmith@sgs-law.com
szadrozny@sgs-law.com
*Counsel for Plaintiff and Class Members*

## <u>PRAYER FOR JURY TRIAL</u>

The Plaintiff and Class Members hereby request a trial by jury on the foregoing Class

Action Complaint.

_____/s/_____          _____/s/_____
Timothy F. Maloney, Esq. #03381          Michael Paul Smith, Esq. #23685
Veronica B. Nannis, Esq. #15679          Sarah A. Zadrozny, Esq. #13911
Timothy L. Creed, Esq. #19364            Smith, Gildea & Schmidt, LLC
Joseph, Greenwald & Laake               600 Washington Avenue, Suite 200
6404 Ivy Lane, Suite 400                 Towson, MD 21202
Greenbelt, Maryland 20770                (410) 821-0070 / (410) 821-0071 (fax)
(301) 220-2200 / (301) 220-1214 (fax)    Email: mpsmith@sgs-law.com
Email: tmaloney@jgllaw.com               szadrozny@sgs-law.com
vnannis@jgllaw.com                       *Counsel for Plaintiff and Class Members*
tcreed@jgllaw.com
*Co-Counsel for Plaintiff and Class Members*