IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD J. FANGMAN, *et al.* | * | |
| *Plaintiffs*, | * | Civil Action No.:1:14-cv-00081-RDB |
| v. | * | |
| GENUINE TITLE, LLC, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF JAY ZUKERBERG

Comes now Jay Zukerberg, being first duly sworn upon his oath, deposes and states as follows:

1. My name is Jay Zukerberg, I am over the age of eighteen (18), am competent to testify and the information contained herein is based upon personal knowledge.

2. I was the President of Genuine Title, LLC from March 2005 until April 2014.

3. Genuine Title was in the business of providing title and settlement services and was licensed in many states including the states of Maryland and Ohio.

4. During its existence, Genuine Title paid for marketing materials, leads and handled the coordination of marketing programs on behalf of brokers, managers, banks and other lenders.  Genuine Title paid for these materials and leads and coordinated the marketing programs in exchange for an agreement from these same brokers, managers, banks and/or other lenders ("Referrers for Material") to refer borrowers to Genuine Title for title services, including the closing of loans. ("Free Marketing Material Agreements"). Over the course of Genuine Title's existence, Genuine Title spent significant sums of money on the Free Marketing Material Agreements.

5. Genuine Title also had agreements with brokers, lenders, lenders' owners and/or managers ("Referrers for Money") to pay money to Referrers for Money for each borrower they, their office, or in some cases, their company referred to Genuine Title for title services, including the closing of loans. ("Referring Money Agreements") Over the course of Genuine Title's existence, Genuine Title spent millions of dollars on Referring Money Agreements. Under the Referring Money Agreements, Genuine Title paid a specific money amount or split of profit to each Referrer for each loan they referred which closed at Genuine Title.

6. The costs of the Referring Money Agreements and Free Marketing Materials (collectively, "Referring Agreement Costs") were paid on a monthly basis based on the number of referred settlements in the previous month. Genuine Title would have preferred to compete by providing lower pricing instead of paying Referring Agreement Costs and kickbacks. However, it was very obvious to me the payment of Referring Agreement Costs and other kickbacks was the far more effective way to increase market share in our particular market, even though it was prohibited by law. Ultimately, the Referring Agreement Costs was paid by the borrowers out of the settlement costs presented on the HUD-1s. Neither the Referrers for Material nor the Referrers for Money provided any title services associated with any of the Referring Agreement Costs. The Referring Agreement Costs were solely for the referral of the borrowers to Genuine Title.

I declare under the penalty of perjury and upon personal knowledge that the foregoing is true and correct.

5/20/16
Executed on:

_____
Jay Zukerberg, Affiant