IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY E. EDMONDSON, | * | |
| Plaintiff, | * | Case No.: 1:16-cv-03938-RDB |
| v. | * | |
| EAGLE NATIONAL BANK, et al., | * | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
## TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Brian L. Moffet, Esq. (Bar I.D. 13821)
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
(410) 727-6464 (telephone)
(410) 385-3700 (facsimile)
bmoffet@milesstockbridge.com

George J. Krueger, Esq. (admitted *pro hac vice*)
Ryan T. Becker, Esq. (admitted *pro hac vice*)
Fox Rothschild LLP
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
215-299-2000 (telephone)
215-299-2150 (facsimile)
gkrueger@foxrothschild.com
rbecker@foxrothschild.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION .................................................................................................1

II.  SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY ...................................4

    A.  The *Fangman* Action.........................................................................4

    B.  Edmondson's Complaint ...................................................................5

III.  STANDARD OF REVIEW......................................................................................7

IV.  ARGUMENT.......................................................................................................9

    A.  Edmondson's Claim Is Barred By RESPA's One-Year Statute of Limitations ...........9

        1.  Legal Standard for Dismissal on Statute of Limitations Grounds....................9

        2.  Edmondson Failed to File Her Claim Within RESPA's One-Year Statute of Limitations. ...................................................................10

        3.  Equitable Tolling Cannot Save Edmondson's RESPA Claim........................11

            a.  This Court's Equitable Tolling Analysis in *Fangman* Demonstrates Why Edmondson's Equitable Tolling Claim Fails Here....................................................................12

            b.  Edmondson's Lack of Due Diligence in Pursuing Her RESPA Claim is Another Reason to Dismiss the Complaint. ..........................18

            c.  Edmondson Also Fails to Plead a Specific Affirmative Act of Concealment By Defendants to Invoke Equitable Tolling.................23

    B.  All Claims Against Defendants Other Than Eagle Nationwide Mortgage Company Should Also Be Dismissed For Failure To State A Claim..........................26

V.  CONCLUSION ..................................................................................................28

Eagle National Bank, Eagle Nationwide Mortgage Company, Eagle National Bancorp, Inc., ESSA Bancorp, Inc., and ESSA Bank & Trust ("Defendants"), by their undersigned attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 105, submit this Memorandum of Law in support of their Motion to Dismiss all claims asserted against them by Plaintiff Mary E. Edmondson ("Edmondson"). For the reasons set forth below, Defendants' Motion to Dismiss should be granted in its entirety and with prejudice.

## I.    INTRODUCTION

The Real Estate Settlement Procedures Act ("RESPA"), upon which Edmondson's sole claim is based, has a one-year statute of limitations. Because Edmondson brings her claim more than *six years* after her loan closed, she needs to rely on the doctrine of equitable tolling to save her otherwise time-barred claim. Under controlling Supreme Court and Fourth Circuit authority, that doctrine does not apply to the allegations in the Complaint and, therefore, Edmondson's claim is subject to dismissal.

This case is a continuation of litigation currently pending before this Court, captioned *Fangman v. Genuine Title, LLC*, Case No. 14-cv-00081-RDB ("*Fangman*"). In that litigation, the same counsel that represents Edmondson here commenced an action against Eagle National Bank and a number of other financial institutions alleging substantially similar facts and also asserting a RESPA violation. That lawsuit, at least with respect to the RESPA claim against Eagle National Bank, ended when plaintiffs' counsel agreed in open Court that the *Fangman* RESPA claim was time barred. With respect to most of the other defendants in *Fangman*, however, the Court concluded that plaintiffs' RESPA claims were eligible for equitable tolling and that the allegations were sufficient to save plaintiffs' RESPA claims from dismissal.

Now, more than one year after that concession in this Court, plaintiffs' counsel has drummed up a new plaintiff to take another run at Eagle National Bank, its former mortgage subsidiary Eagle Nationwide Mortgage Company, and the entities that purchased Eagle National Bank in December 2015. However, the notion that the Court should permit equitable tolling of Edmondson's RESPA claim should be rejected for at least two reasons.

First, under the analytical framework set out by this Court in its prior equitable tolling decision in *Fangman*, where the Court imputed plaintiffs' counsels' investigation into Genuine Title and the alleged kickback scheme to plaintiffs themselves for purposes of satisfying the equitable tolling due diligence requirement, Edmondson's claim here is time barred. Edmondson's counsels' repeated representations to multiple federal courts make plain that, by no later than mid-2015, they had all the information necessary to bring this claim. For whatever reason, they chose not to do so for an *additional 18 months*. Since this Court gave the *Fangman* plaintiffs the benefit of their counsels' knowledge to equitably toll their RESPA claims, knowledge of that same counsel should similarly be imputed to Edmondson, and the only conclusion that can be reached is that equitable tolling cannot apply here.

Second, analyzing Edmondson's equitable tolling claim under the framework articulated most recently by the United States Supreme Court in an opinion issued *after* this Court's motion to dismiss decision in *Fangman* requires the same result. In that case, the Supreme Court reiterated that in order to invoke equitable tolling, a plaintiff bears the burden of demonstrating that he or she exercised due diligence in ascertaining whether he or she had a claim. Here, Edmondson did not plead *any* facts to meet that burden. In fact, Edmondson *admits* in her Complaint that she did nothing about the supposed problems with the closing of her loan until years after the expiration of RESPA's one-year statute of limitations when she was contacted by counsel on or about April 20, 2016. That is plainly insufficient

as a matter of law to support an equitable tolling claim.   Additionally, even if Edmondson did adequately plead due diligence, which she did not, her equitable tolling claim still fails because she did not plead sufficient facts with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure to demonstrate that Defendants affirmatively misled her at any time.   Due to this insufficiency, Edmondson cannot satisfy the "fraudulent concealment" prong of her equitable tolling claim and therefore it cannot be invoked to save her RESPA claim.

Statutes of limitation are necessary to prevent defendants from having to answer stale claims, with the exaggerated risk that with the passage of time memories fade, witnesses are no longer available, and documents are lost.  Such time limitations must have meaning in order for the judicial system to operate fairly and efficiently.   Edmondson's theory of equitable tolling is easily summarized: Edmondson claims that she acted timely after being contacted by counsel who, six years after her closing, told her that she may have a RESPA claim.  If accepted, this theory re-writes RESPA and makes her counsel—and not the terms of the legislation passed by Congress—the master of the RESPA statute of limitation, as it gives counsel the ability to contact new plaintiffs at their convenience and claim the benefit of equitable tolling to allow stale claims to move forward.  Such a practice is outside the bounds of the doctrine of equitable tolling, and is not in keeping with the principles underlying this exception to the statute of limitations, which the United States Supreme Court and the Fourth Circuit have established should be narrowly applied and only used in extraordinary circumstances.

That Edmondson's counsel brought the same case against Eagle National Bank, albeit with a slew of different plaintiffs, more than two years before commencing this suit eviscerates any notion that Edmondson's circumstances are extraordinary.  Therefore, Edmondson's Complaint is time barred and

3

should be dismissed with prejudice because it was brought outside of RESPA's one-year statute of limitations.

Finally, the claims against all of the Defendants other than Eagle Nationwide Mortgage Company should be dismissed for the additional reason that the Complaint does not plead any actionable conduct with respect to those Defendants. Despite Edmondson's attempt to impermissibly lump all of the Defendants together under the moniker of the "Eagle Defendants," her only non-conclusory allegations of purported misconduct are tied to Eagle Nationwide Mortgage Company. Indeed, by Edmondson's own admission, the ESSA Defendants had no involvement whatsoever with the facts alleged in the Complaint, as they merely merged with Eagle National Bank in December 2015. Edmondson's Complaint therefore conflicts with the well-established principle that parent corporations cannot be held liable for alleged acts of their subsidiaries by virtue of that corporate relationship. Accordingly, at a minimum, Eagle National Bank, Eagle National Bancorp, Inc., ESSA Bancorp, Inc., and ESSA Bank & Trust are entitled to dismissal of the Complaint.

## II.    SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY

### A.    The *Fangman* Action

The alleged kickback scheme involving Genuine Title, LLC ("Genuine Title") that is the subject of this Complaint has an extensive history with this Court. In December 2013, Edward and Vickie Fangman (represented by the same counsel involved in this case) filed a complaint against Genuine Title involving similar allegations in the Circuit Court of Baltimore County ("*Fangman*") that was removed to this Court in January 2014. *See Fangman v. Genuine Title, LLC*, Case No. 1:14-cv-00081-RDB, at Dkt. No. 1. On January 2, 2015, after gaining access to Genuine Title's computer servers and client information several months earlier, plaintiffs in *Fangman* filed a First Amended Complaint naming

4

Eagle National Bank and a host of other financial institutions as defendants, among others. *See Fangman*, Dkt. No. 47. That First Amended Complaint in *Fangman* alleged violations of RESPA, Maryland's state-law analog to RESPA, and the Maryland Consumer Protection Act. *See id.* Plaintiffs in *Fangman* filed a Second Amended Complaint on May 20, 2015, adding additional parties and clarifying some of their previous allegations. *See Fangman*, Dkt. No. 138.

In *Fangman*, Eagle National Bank (along with a number of other defendants) filed a Motion to Dismiss on July 21, 2015. *See Fangman*, Dkt. No. 167. At oral argument before this Court in November 2015, plaintiffs' counsel agreed that the RESPA claim against Eagle National Bank was time barred. *See Fangman v. Genuine Title, LLC*, Case No. 14-cv-00081-RDB, 2015 WL 8315704 at *6 n.11 (D. Md. Dec. 9, 2015).

Now, more than one year *after* agreeing that the RESPA claim in *Fangman* was time barred as to Eagle National Bank, the same counsel who represented plaintiffs in that case have filed a substantially similar complaint on behalf of Edmondson, once again naming Eagle National Bank as a defendant. This Complaint also names as defendants a number of other entities allegedly in Eagle National Bank's corporate chain, including entities named solely due to the fact that ESSA Bancorp, Inc. acquired Eagle National Bank as of December 2015. Complaint ¶¶ 8-11.

## B.    Edmondson's Complaint[1]

Edmondson alleges that she "is a borrower who currently has or had a federally related mortgage loan originated and/or serviced by Defendants Eagle National Bank and/or Eagle Nationwide Mortgage Company and/or Eagle National Bancorp, Inc. and/or ESSA Bank & Trust and/or ESSA Bancorp, Inc.

---

[1]   Defendants accept as true the allegations contained in Edmondson's Complaint for purposes of this motion only.

5

('Eagle Defendants')," and that "[f]or the purposes of procuring title insurance and to facilitate the escrow for settlement process, Plaintiff used Genuine Title, LLC as a result of the Eagle Defendants' referral thereto." Complaint ¶ 1. Edmondson repeats the same allegations that were made in *Fangman*, namely that Defendants and Genuine Title were allegedly involved in an illegal kickback scheme whereby the "Eagle Defendants"[2] received unearned fees from Genuine Title for referrals in violation of RESPA. Complaint ¶ 2.

Edmondson claims that Genuine Title or its affiliated individuals and entities provided kickbacks in the form of free marketing materials and cash to agents of Defendants in exchange for title work referrals from 2009 to 2014.[3]  Complaint ¶ 3.  Edmondson also alleges that these payments were concealed by Defendants and Genuine Title because they were not disclosed on Edmondson's HUD-1 and other unspecified loan documents. Complaint ¶ 3.

Edmondson further claims that on or about August 19, 2010, she obtained a residential mortgage to refinance her home from Eagle Nationwide Mortgage Company, Eagle National Bank's former mortgage subsidiary, through Adam Mandelberg, whom Edmondson alleges was a branch manager at Eagle Nationwide Mortgage Company. Complaint ¶ 7, 60. Edmondson alleges that Eagle Nationwide Mortgage Company referred her to Genuine Title for title and settlement services in connection with the closing of her loan. Complaint ¶ 62.

Edmondson styles her Complaint as a class action, seeking to represent the following proposed class: "All individuals in the United States who were borrowers on a federally related mortgage loan (as

---

[2] The Complaint defines the "Eagle Defendants" to include all of the Defendants named in the Complaint. Complaint ¶ 1.

[3] In reality, Eagle National Bank was out of the loan business entirely by early 2010, but as this is a motion to dismiss, Defendants accept as true Edmondson's allegations.

defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) from, or originated by, Eagle National Bank or Eagle Nationwide Mortgage Company for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014." Complaint ¶ 67.

In her 91-paragraph Complaint, Edmondson does not include *any* allegation of *any* specific inquiry or diligence she undertook after her loan closed to see if there was, or may have been, *any* legal irregularity or red flag. Rather, the Complaint includes a single paragraph, pled in conclusory form with the apparent intention to plead facts sufficient to support the equitable tolling doctrine, which states: "Plaintiff acted reasonably and diligently. Plaintiff did not and could not have known about the Kickback Scheme, due to Genuine Title and the Eagle Defendants' efforts to conceal the kickbacks from Plaintiff, Class Members, and regulators, until contacted by undersigned counsel on or about April 20, 2016." Complaint ¶ 47.

Edmondson asserts a single count against Defendants for violation of RESPA under both 12 U.S.C. §§ 2607(a) and (b). Complaint ¶¶ 80-91.

## III. STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Ciy. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.

The Supreme Court has emphasized the importance of the pleading requirements set forth in the Federal Rules of Civil Procedure and the attendant standards courts should use when deciding motions to dismiss. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that "a

7

plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A plaintiff is required to plead facts in a complaint that show an entitlement to relief that is "plausible on its face." *Id.* at 570.

Shortly after deciding *Twombly*, the Supreme Court elaborated on the "plausibility" requirements in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A court is to "draw on its judicial experience and common sense" when deciding whether a complaint states a plausible claim for relief. *Id.* at 679. In order to decide whether this standard is met, a court separates legal conclusions from factual allegations, and "then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a fraud-based claim (including an argument for fraudulent concealment in the equitable tolling context) must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (citation omitted).

8

Accordingly, "merely intoning the word 'fraudulently' in a complaint is not sufficient to raise the defense of equitable tolling. *Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 596 (D. Md. 2009) (quoting *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)). "Rather, a plaintiff seeking to escape the statute in such a case shall make distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made." *Id.* (citation and internal quotation marks omitted).

## IV.   ARGUMENT

### A.   Edmondson's Claim Is Barred By RESPA's One-Year Statute of Limitations

#### 1.   Legal Standard for Dismissal on Statute of Limitations Grounds.

A statute of limitations defense is appropriately brought as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) where the allegations of the complaint reveal that an action is untimely. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see also Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004) ("When it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss.") (citation omitted). Further, where the untimeliness of the action is evident from the face of the complaint and cannot be cured, dismissal on the statute of limitations grounds is with prejudice. *See Benjamin-Sohal v. City of Berkeley Police Dep't*, 229 F.3d 1156 (9th Cir. 2000) (dismissal with prejudice was proper where the claims were barred by the statute of limitations); *see also Varner v. Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004) (affirming dismissal of complaint with prejudice based on statute of limitations).

9

## 2.   Edmondson Failed to File Her Claim Within RESPA's One-Year Statute of Limitations.

RESPA requires that claims under Section 8 be asserted within one year from the date of the occurrence of the violation. 12 U.S.C. § 2614. The "date of the occurrence of the violation" for a RESPA Section 8 claim "generally refers to the date of closing for loan origination violations." *Fangman v. Genuine Title, LLC*, No. 14-cv-0081-RDB, 2016 WL 6600509 at *4 (D. Md. Nov. 8, 2016) (quoting *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012)); *see also Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 483 (D. Md. 2006).

According to the Complaint, Edmondson closed on the refinancing of her residential mortgage loan on August 19, 2010. *See* Complaint ¶ 61. Nonetheless, Edmondson did not file her lawsuit until December 8, 2016, more than *six years* after her loan closed, and more than *five years* after the statute of limitations expired on her alleged RESPA claim. *See generally* Complaint.

Moreover, this suit was not filed until:

1.   *Three years after* the original complaint was filed in *Fangman;[4]*

2.   *Almost two years* after the First Amended Complaint in *Fangman* named Eagle   National Bank as a defendant;[5] and

3.   *More than one year after* Edmondson's counsel admitted at oral argument in *Fangman* that the RESPA claim they brought against Eagle National Bank was time barred.[6]

For the Court's reference, attached as Exhibit A is a timeline depicting key events related to Edmondson's equitable tolling argument that took place between the closing of her loan and the filing of her Complaint.

---

[4]  *See Fangman v. Genuine Title, LLC*, No. 1:14-cv-00081-RDB, Dkt. Nos. 1-2,

[5]  *See id.* at Dkt. No. 47.

[6]  *See Fangman*, 2015 WL 8315704 at *6 n.11.

### 3.     Equitable Tolling Cannot Save Edmondson's RESPA Claim.

Recognizing that her RESPA claim is time barred on its face, Edmondson relies on equitable tolling to try and extend the one-year statute of limitations in an attempt to save her claim: "Plaintiff acted reasonably and diligently.  Plaintiff did not and could not have known about the Kickback Scheme, due to Genuine Title and the Eagle Defendants' efforts to conceal the kickbacks from Plaintiff, Class Members, and regulators, until contacted by undersigned counsel on or about April 20, 2016." Complaint at ¶ 47.  This allegation is not plausible since, as shown by Exhibit A and the discussion below, there was more than enough information in the public domain, and in *Edmondson's counsel's own files*, long before this date that makes the doctrine of equitable tolling unavailable to Edmondson.

The existence and application of statutes of limitation are critical to the efficient administration of the justice system.  As the Fourth Circuit noted:

> Statutes of limitation represent a public policy judgment by a State as to the time at which an action becomes too stale to proceed in its courts. States rightly may be concerned about the prosecution of fraudulent claims and reliability of judgments rendered upon old claims, where memories have faded, witnesses may have died, and evidence may have been lost. It has also been said that statutes of limitation also serve the interest of allowing defendants to rest assured that, after a certain period of time, their exposure to liability has ended.

*Goad v. Celotex Corp.*, 831 F.2d 508, 510-11 (4th Cir. 1987).  Because equitable tolling is a departure from the strict application of the statute of limitations, and undermines the policy reasons for applying the legislatively mandated limitations period, it is the rare exception of a case where the doctrine should apply. *See Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) ("Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.") (quoting *Harris*

*v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). "The circumstances under which equitable tolling has been permitted are therefore quite narrow." *Id.*

In order to prove that she is entitled to equitable tolling of her RESPA claim, Edmondson must demonstrate that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995).

Whether the Court analyzes the merits of Edmondson's equitable tolling argument the same way it did in *Fangman*, or it analyzes that argument through the framework most recently reiterated by the United States Supreme Court, the conclusion is the same: Edmondson cannot satisfy the diligence requirement of the equitable tolling test. This failure dooms the Complaint and requires dismissal with prejudice.

### a. This Court's Equitable Tolling Analysis in *Fangman* Demonstrates Why Edmondson's Equitable Tolling Claim Fails Here.

In *Fangman*, this Court considered motions to dismiss that posed the same question advanced here: whether plaintiffs are entitled to use the equitable tolling doctrine to save an otherwise time barred RESPA claim. *See Fangman*, 2015 WL 8315704 at *7. In *Fangman*, the Court described the test for equitable tolling of a RESPA claim as follows: "a plaintiff must allege with specificity 'fraudulent concealment on the part of the defendants' and the inability of the plaintiff, despite due diligence, to discover the fraud." *Id.* (citing *Grant*, 871 F. Supp. 2d at 470 n.10).

In concluding that plaintiffs in *Fangman* pled sufficient facts to invoke equitable tolling at the motion to dismiss stage, this Court relied on the thorough investigation of *counsel* to allow plaintiffs to satisfy the "due diligence" prong of the equitable tolling test:

12

> Rather than sleeping on their rights, *Plaintiffs' counsel* has undergone a large-scale review of Defendant Genuine Title's computer system. It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified.

*Id.* (emphasis added).

This Court further held that *Fangman* presented "*unique circumstances*" which "demonstrated that equitable tolling is warranted."[7] *Id.* (emphasis added). In other words, even though plaintiffs in *Fangman* did not conduct any due diligence themselves in order to discover any potential RESPA claims, the Court gave them the benefit of their counsels' investigation into the facts surrounding the claim and tolled the statute on that basis.

Edmondson is represented by the same counsel as plaintiffs in *Fangman*, and indeed, in her Complaint, identifies this case as related to *Fangman*. *See* Complaint ¶ 49. As Edmondson's counsel has repeatedly made plain both to this Court and to at least one other United States District Court, their investigative efforts into Genuine Title's customers in order to identify plaintiffs began three years ago, in 2014, and focused on obtaining all of Genuine Title's files. *See Fangman*, Dkt. No. 150-2 at 2-10[8] (recounting successful efforts to gain access to Genuine Title's files and customer information). The

---

[7] This conclusion did not apply to Eagle National Bank, since at the November 24, 2015 hearing on the various motions to dismiss in *Fangman*, plaintiffs' counsel conceded that the RESPA claims against Eagle National Bank were time barred. *See Fangman*, 2015 WL 8315704 at *6 n.1.

[8] In reviewing a Rule 12(b)(6) motion to dismiss, a court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). A court "may also consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Id.* (citations omitted); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."). Therefore, the Court may properly consider the various public filings in both *Fangman* and the related litigation pending against Emery Federal Credit Union in the United States District Court for the Northern District of Ohio that contain relevant information relating to the claims in Edmondson's complaint that equitable tolling should save her time barred claim. Indeed the case against Emery was initially part of *Fangman*, but was transferred in light of a forum selection clause. *See Fangman*, 2015 WL 8315704 at *15.

13

results of these efforts, repeatedly championed by Edmondson's counsel, demonstrate that by no later than the first half of 2015, Edmondson's counsel had more than enough information to bring an action on behalf of Edmondson.[9]  Yet Edmondson did not file a Complaint for well over an additional year, until December 2016, long after the latest possible time that even an equitably-tolled statute of limitations would have run in this case.

Edmondson's counsel admit that they began to access Genuine Title's files as early as November 2014, and their efforts resulted in the filing of a First Amended Complaint in *Fangman* in January 2015 on behalf of a host of new plaintiffs and a number of new financial institution defendants, including Eagle National Bank, derived from that access. *See Fangman*, Dkt. No. 47 (Amended Complaint); Dkt. No. 150-2 (submitting status report on December 1, 2014 acknowledging that plaintiffs were receiving documents from Genuine Title's Receiver). In January 2015, Edmondson's counsel had made so much headway into the Genuine Title servers that counsel sent out solicitation notices to other potential Eagle National Bank plaintiffs.[10]  *See Fangman*, Dkt. No. 145-10 at 2.

---

[9] Edmondson's claims to the contrary are not plausible under *Twombly*. Indeed, on April 29, 2015, the Consumer Financial Protection Bureau ("CFPB") filed an enforcement action in this Court styled *Consumer Financial Protection Bureau, et al. v. Genuine Title, LLC, et al.*, Case No. 15-cv-01235-RDB (D. Md.).  One of the defendants in that case was Adam Mandelberg, who Edmondson alleges in her Complaint was responsible for helping her obtain a loan and referring her to Genuine Title for settlement services. *See* Complaint at ¶¶ 60-61. Edmondson's counsel contributed and participated in the investigation of the CFPB, *see Fangman*, Dkt. No. 412-1 at 5, that culminated with the filing of the enforcement action and therefore could have filed suit on behalf of Edmonson at that time. Instead, Edmondson's counsel waited for almost one year before allegedly contacting Edmondson for the first time, *see* Complaint at ¶ 47, and then waited another eight months thereafter to file this case.  This reflects neither the diligence that the doctrine of equitable tolling requires nor satisfies *Twombly's* requirement of pleading plausible facts.

[10] From answers to interrogatories plaintiffs in *Fangman* provided to West Town Bank & Trust, Edmondson's counsel sent out waves of solicitations seeking plaintiffs in May 2013, October 2014, December 2014, August 2015, December 2015, and May 2016. *See Fangman*, Dkt. No. 358-25 at 7-10. Again, this shows the depths of information that Edmondson's counsel had as to potential plaintiffs long before Edmondson's claim was ultimately brought.

14

In February 2015, Edmondson's counsel further represented to this Court that they continued to obtain Genuine Title's client information, with their efforts resulting in "accessing more significant computer data and documents." *See Fangman*, Dkt. No. 92 at 6-7. And in June 2015, counsel made clear to this Court that they had full access to all of Genuine Title's customer files:

> To date, the Plaintiffs have received Genuine Title's server, which includes Genuine Title's email exchange server and its computer server containing various documents and title settlement process software. Plaintiffs have been able to pull data from Genuine Title's software that appears to represent Genuine Title file numbers, statuses, loan products, loan numbers (in some cases), buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information.

*Fangman*, Dkt. No. 150-2 at 7.

In addition to convincing this Court in *Fangman* that plaintiffs there should be afforded the benefit of their counsels' investigation to save their otherwise stale claims, plaintiffs in the action brought against Emery Federal Credit Union that was transferred to the Northern District of Ohio made a similar argument. Again, the same counsel that represents Edmondson told that Ohio federal court, "Once counsel for the Plaintiffs learned of the scheme, they engaged in an intensive investigation to diligently pursue the claims." *Palombaro, Jr., et al. v. Emery Federal Credit Union*, Case No. 15-cv-00792-SJD-KLL (N.D. Oh.), Dkt. No. 235 at 16. They continued, "Nearly all of the information and evidence the plaintiffs have gathered in order to make the averments in the Second and Third Amended Complaints have come from their extraordinary investigative efforts—the very antithesis of sleeping on their rights." *Id.*

The net result of Edmondson's counsels' diligent investigative efforts is that by no later than *June 2015*, they had access to all of Genuine Title's records, which, as this Court has held, included, "a spreadsheet . . . from Genuine Title's server, which documents loans referred to Genuine Title from

15

roughly 2006 through 2013, including *borrower names* and referring loan officers." *Fangman*, 2016 WL 6600509 at *2 (emphasis added). Therefore, by that same date, counsel also had all of the information needed to bring a RESPA claim on behalf of Edmondson, yet no claim was filed until December 2016, fully *18 months* later.

What makes the delay in filing Edmondson's claim even more egregious is that Edmondson's counsel knew full well that as of November 2015 (again, more than a year before her claim was actually filed), the claim previously brought against Eagle National Bank was time barred. As this Court wrote in *Fangman*: "Plaintiffs and Eagle National agreed at this Court's November 24, 2015 hearing that Plaintiffs' RESPA claim against Eagle National is time-barred. Plaintiffs conceded that more than one year had elapsed from the time the Eagle National Plaintiffs' cause of action arose to their naming of Eagle National in the Amended Complaint." *Fangman*, 2015 WL 8315704 at *6 n.11.

While this Court previously concluded that "unique circumstances" existed to equitably toll the statute of limitations for the claims at issue in the Second Amended Complaint in *Fangman*, Edmondson cannot rely on the same "unique circumstances" to save her claim, *filed nearly two years later*. By definition, Edmondson's status cannot be described as "unique" because she is relying on the same factual investigation by the same counsel that led to the filing of *Fangman* two years ago as the basis for her tolling argument. Despite counsel being armed with all of the files and information necessary to file Edmondson's claim against Defendants in 2015, Edmondson avers, in a contrary and conclusory fashion: "Plaintiff acted reasonably and diligently. Plaintiff did not and could not have known about the Kickback Scheme, due to Genuine Title and the Eagle Defendants' efforts to conceal the kickbacks from Plaintiff, Class Members, and regulators, until contacted by the undersigned counsel on or about April 20, 2016." Complaint ¶ 47.

16

Permitting equitable tolling in these circumstances would write out of the law the legislative determination that RESPA claims must be brought within one year. Given the admitted possession of Genuine Title's documents and customer lists, counsel is attempting to become the master of the statute of limitations, with the ability to roll out new plaintiffs to replace unsuccessful plaintiffs every couple of years as they see fit. Under this theory, there is no end to the statute of limitation, as Edmondson's counsel could just wait to notify additional plaintiffs it has known about for years until a time that is convenient for them. This does not constitute the type of "extraordinary circumstances" contemplated by the Fourth Circuit that would permit the "quite narrow" equitable tolling exception to the statute of limitations to be invoked. *See Chao*, 291 F.3d at 283; *see also Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 164 (3d Cir. 2016) ("Indeed, accepting Plaintiff's theory in this case—toll indefinitely the limitations period for claims under RESPA until a lawyer can find the right plaintiff to join a lawsuit and notify other putative plaintiffs—would effectively write the statute of limitations out of RESPA."); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007) ("plaintiffs' notion that allegedly concealed fraud excuses the need for any diligence on plaintiffs' part would permit statutory periods to be tolled indefinitely").

Given the fact that Edmondson's counsel, as they so often made clear to this Court, had all of the information needed to pursue Edmondson's claim against Defendants no later than mid-2015, there is no reason to permit Edmondson's Complaint, filed 18 months after that point and more than six years after her loan closed, to go forward. Because Edmondson's RESPA claim—the sole count in her Complaint—is time barred, the Complaint should be dismissed with prejudice because no amendment could possibly cure this fatal defect.

17

      **b.**      **Edmondson's Lack of Due Diligence in Pursuing Her RESPA Claim is Another Reason to Dismiss the Complaint.**

Instead of focusing on the efforts of a plaintiff's counsel in conducting an investigation when deciding the propriety of an equitable tolling argument, the Supreme Court, the Fourth Circuit, and other courts in this District have focused on the efforts of the plaintiff to take reasonable steps to pursue her claims in order to satisfy the equitable tolling test. *See Supermarket of Marlinton*, 71 F.3d at 122 (equitable tolling requires plaintiff to satisfy a three-part test: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence."); *Minter*, 675 F. Supp. 2d at 596 (quoting same in context of RESPA case). Even when viewed under this analytical framework, the conclusion remains the same: Edmondson is not entitled to equitable tolling of her RESPA claim.

In *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750 (2016), a decision issued *after* this Court's motion to dismiss opinion in *Fangman*, the Supreme Court reiterated the high burden needed to overcome the presumption against equitable tolling, how the test was designed to work, and unequivocally declared that a plaintiff's diligence in pursuing her rights is required.

"Under *Holland*, a litigant is entitled to equitable tolling of a statute of limitations only if the litigant established two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* at 755 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The Supreme Court made clear that each of these prongs represents a separate element of the test—they are not factors—and that failure of a plaintiff to meet either one warrants rejection of the equitable tolling claim. *See id.* at 756. The Supreme Court also explained that it is the party (Edmondson here) "seeking equitable tolling [that] bears the burden of

establishing two elements." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Court held that the diligence prong is meant to address "those affairs within the litigant's control" and that the "extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Id.* Finally, the Court elaborated on the second prong of the test, holding, "We therefore reaffirm that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* (emphasis in original).

Here, Edmondson has not pled any facts whatsoever that demonstrate that she diligently pursued her rights at any time since her loan closed in August 2010, or that she can meet the high burden established by the Supreme Court in *Menominee Indian Tribe*.  Although Edmondson alleges that she paid more for settlement services because of the "kickback scheme," she does not plead any facts alleging how or when she learned that her settlement costs should have been less.  Instead, she pleads that she did not do anything to protect her rights as she "did not and could not have known" about her claim "until contacted by undersigned counsel on or about April 20, 2016."  Complaint ¶ 47. Edmondson did not plead that she consulted with attorneys to ensure there were no issues or red flags surrounding her closing.  Nor did she plead that she ever reviewed her HUD-1 statement or had an attorney review it.  To the contrary, she admits that she did *nothing* until contacted by her current counsel.  This is the antithesis of the type of "due diligence" required to establish equitable tolling.

In *Cunningham v. M&T Bank Corp.*, 814 F.3d 156 (3d Cir. 2016), another significant decision issued after this Court's motion to dismiss opinion in *Fangman*, the Third Circuit addressed a nearly identical factual situation, concluding plaintiffs there could *not* rely on equitable tolling to save their time barred RESPA claims.  In that case, plaintiffs claimed that defendants and its reinsurer colluded and violated RESPA in connection with captive mortgage reinsurance arrangements.  *See id.* at 159.

19

The *Cunningham* plaintiffs claimed that they did not become aware of their claims until their counsel

sent them a letter advising that they were investigating defendants' captive mortgage reinsurance. *See*

*id.*

      In affirming the grant of summary judgment for defendants on statute of limitation grounds,

*Cunningham* held that plaintiffs could not avail themselves of the equitable tolling doctrine because they

could not demonstrate that they exercised due diligence even in the face of their argument that

defendants actively misled them:

> After the closing, Plaintiffs took no steps to investigate whether M&T
> Bank's captive reinsurance program might violate state or federal law.
> They did not, for example, ask their mortgage insurer if their particular
> insurance policy had been reinsured and, if so, with whom. They did not
> seek the advice of an attorney, research captive reinsurance, request
> documents related to their mortgage insurance, or take any steps to
> discover if they had a claim under RESPA. Plaintiffs claim simply that it
> was not until late 2011 or early 2012, when counsel asked them to join a
> lawsuit, that they became aware of the basis for a possible claim under
> RESPA.

*Id.* at 162. The court added:

> If Plaintiffs had taken some steps to investigate captive reinsurance, they
> would have found breadcrumbs leading them toward a potential RESPA
> claim. Captive reinsurance arrangements date back to the late 1990s.
> Lawsuits challenging the arrangements as vehicles for illegal kickbacks
> soon followed. [citation omitted]. And around the time Plaintiffs closed
> on their mortgage loans with M&T Bank, their current counsel had
> brought several nearly identical lawsuits against lenders and captive
> reinsurance companies in this area.

*Id.* at 162 n.3.

      *Cunningham* relied on the legal principle that "[s]tatutes of limitations are 'designed to promote

justice by preventing surprises through the revival of claims that have been allowed to slumber until

evidence has been lost, memories have faded, and witnesses have disappeared.'" *Id.* at 164 (quoting

*Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944)). *Cunningham* concluded its analysis by pointing out that plaintiffs' "lawyerly intervention" theory—"toll indefinitely the limitations period for claims under RESPA until a lawyer can find the right plaintiff to join a lawsuit"—would inevitably have the effect of "writ[ing] the statute of limitations out of RESPA." *Id.*

In another factually similar case, *Riddle v. Bank of Am. Corp.*, No. 12-1740, 2013 WL 6061363 (E.D. Pa. Nov. 18, 2013), *aff'd* 588 Fed. App'x 127 (3d Cir. 2014), the court also held that equitable tolling was not available to plaintiffs in an alleged RESPA kickback case. There, the plaintiffs did not engage in any degree of diligence after their loans closed to try and discover any supposed injuries, instead pursuing a claim only after they were contacted by lawyers to bring an action. *See id.* at *5. Plaintiffs in *Riddle* argued that their lack of due diligence should be overlooked because they had no reason to suspect that they were injured by defendants' alleged kickback scheme until alerted by their attorneys, but the court rejected that reasoning. The court concluded that plaintiffs' "argument fails because it renders the statute of limitations a nullity" and "would leave the Court with no way to determine when the clock begins to run on their claims." *Id.* at *7.[11] The *Riddle* plaintiffs' argument was further undercut by the fact that a number of identical cases were filed years earlier. *Id.*

So too here. Edmondson cannot escape the fact that she affirmatively pled that she exercised *no diligence* whatsoever after her closing or made any effort to determine whether grounds for a potential

---

[11] The *Riddle* court continued: "Under Plaintiffs' theory, when would the statute of limitations run? One year after Plaintiffs received their first solicitation letter? One year after Plaintiffs first met with lawyers to discuss their claims? Is there a point in time in which Plaintiffs had to seek the advice of counsel, rather than having counsel approach them? The record is devoid of evidence suggesting Plaintiffs were unable to discuss these issues with counsel prior to closing, during closing, or after closing." *Id.* Similarly here, there is nothing in Edmondson's Complaint that suggests why she could not have discussed her loan with counsel prior to closing, during closing, or after closing. Further, there is nothing in the Complaint that suggests why Edmondson could not have discussed her loan with counsel prior to April 20, 2016, almost *six years* after her loan closed on August 19, 2010.

RESPA violation existed. *See* Complaint ¶ 47. It simply cannot be said that Edmondson "diligently pursued her rights" or that there were "extraordinary circumstances beyond her control" that excuse her late filing. *See Menominee Indian Tribe*, 136 S. Ct. at 755. If Edmondson had exercised even a modicum of due diligence, she would have contacted counsel rather than have counsel contact her. But even without doing that, a basic Internet search would have returned any number of "breadcrumbs" that would have alerted Edmondson to a potential problem with Genuine Title, including, at a minimum:

- A lawsuit making similar allegations against Genuine Title and a number of financial institutions filed in December 2012. *See Roach v. Wells Fargo Bank, N.A.*, Case No. 12-cv-03800-WDQ (D. Md.).

- The original complaint in *Fangman* that was brought against Genuine Title in December 2013 and identifies Eagle National Bank as the alleged lender involved in the alleged kickback scheme. *See Fangman*, Dkt. No. 1, ¶ 19.

- The First Amended Complaint in *Fangman* naming Eagle National Bank as a defendant along with a number of other financial institutions in January 2015. *See Fangman*, Dkt. No. 47.

- A Complaint brought against Genuine Title and a number of individual and business entities, including the individual who allegedly helped Edmondson obtain her loan, by the CFPB and the Maryland Attorney General's Office in April 2015. *See Consumer Fin. Protection Bureau v. Genuine Title, LLC*, Case No. 15-cv-01235-RDB (D. Md.).

- The December 9, 2015 opinion of this Court dismissing RESPA claims against Eagle National Bank after plaintiffs' counsel admitted they were barred by the statute of limitations. *See Fangman v. Genuine Title, LLC*, Case No. 14-cv-00081-RDB, 2015 WL 8315704 (D. Md. Dec. 9, 2015).

The law requires that Edmondson demonstrate she made some type of affirmative effort to uncover whether there were, or may have been, issues concerning her loan at some point between the time she closed in August 2010 and the time she was contacted by counsel in April 2016. Edmondson has not, and cannot, plead that she engaged in any inquiry whatsoever, reasonable or otherwise. That

failure is fatal to her ability to utilize equitable tolling to save her time barred RESPA claim. *See Menominee Indian Tribe*, 136 S. Ct. at 755-56.

### c. Edmondson Also Fails to Plead a Specific Affirmative Act of Concealment By Defendants to Invoke Equitable Tolling.

The exercise of due diligence by Edmondson is a necessary, but not sufficient, predicate to satisfy the equitable tolling test. Even if Edmondson had adequately pleaded due diligence, and she has not, her equitable tolling argument should also be rejected because she failed to adequately demonstrate that Defendants "fraudulently concealed facts that are the basis of the plaintiff's claim[.]" *Supermarket of Marlinton,* 71 F.3d at 122.

Because a violation of RESPA is not a "self-concealing wrong," nondisclosure or mere silence is insufficient to warrant equitable tolling—rather, there must be an affirmative act to conceal the alleged kickback from a plaintiff. *See Minter v. Wells Fargo Bank, N.A.*, 924 F. Supp. 2d 627, 642 (D. Md. 2013) (citing *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415 (6th Cir. 2009)); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 577 (N.D. Cal. 2007) (refusing to equitably toll RESPA's statute of limitations because the plaintiff failed to allege any active concealment)); *see also Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009) ("For a RESPA claim to warrant equitable tolling, mere silence or nondisclosure is not enough to trigger estoppel.") (citation and internal quotation marks omitted). Further, the Fourth Circuit has made clear that silence or "an alleged failure to own up to illegal conduct" is also not effective to prevail on the fraudulent concealment prong of the equitable tolling test. *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987).

The case of *Mullinax v. Radian Guaranty Inc.*, 199 F. Supp. 2d 311 (M.D.N.C. 2002) is

instructive. There, the court found that allegations of illegal kickbacks in violation of RESPA alone are

insufficient to establish equitable tolling and that "mere silence, or one's unwillingness to divulge one's

allegedly wrongful activities," does not by itself establish fraudulent concealment. The court reasoned:

> [B]ased on the Fourth Circuit's standard, the Court concludes that a
> violation of RESPA alone is not a self-concealing wrong, because the
> elements of RESPA do not include fraud, deception, or concealment.
> Instead, RESPA is violated when the lender or the insurer gives or accepts
> a "fee, kickback, or thing of value" in return for the referral of business
> "incident to or a part of a real estate settlement service." 12 U.S.C. §
> 2607. Accordingly, even if a kickback scheme is generally secretive, it
> need not be so, and therefore it does not qualify as a self-concealing
> wrong.
>
> . . .
>
> While the business transactions that [defendant] allegedly participated in
> demonstrate a level of sophistication, the use of these transactions, without
> more, does not suggest that [defendant] acted affirmatively to fraudulently
> mislead Plaintiffs. At most, the kickback methods allegedly used by
> [defendant], if proved, could demonstrate that [defendant] tried to hide
> these activities, but it does not demonstrate evidence of the type of
> affirmative effort to mislead which is usually required and present to
> justify a finding of fraudulent concealment.

*Id.* at 329 (citation and internal quotation marks omitted).

Here, while Edmondson uses the buzzword "conceal" (largely in conclusory fashion) throughout

her Complaint, *see* Complaint ¶¶ 3, 24, 30, 34-35, 63, 89, a review of her allegations confirms that in

essence, the affirmative concealment pled in connection with her particular loan is that Defendants

supposedly failed to disclose the alleged kickbacks on her HUD-1. *See* Complaint ¶ 3 ("These payments

were concealed by the Eagle Defendants and Genuine Title from Plaintiff and Class Members and were

omitted from Plaintiff and Class Members' HUD-1s"); ¶ 34 ("The payment and receipt of Referring

Cash was concealed and not disclosed on borrowers' HUD-1s, including the HUD-1s of Plaintiff and

24

other Class Members"); ¶ 63 ("The kickbacks were concealed from Plaintiff by the Eagle Defendants and Genuine Title and were omitted from Plaintiff's HUD-1 settlement statement"); ¶ 89 ("Genuine Title and the Eagle Defendants actively concealed the kickbacks paid to Referring Brokers form Plaintiff and Class Members by refusing to list the kickbacks on Plaintiff and Class Members' HUD-1 settlement statement and settlement documents"). This argument fails for a number of reasons.

First, nondisclosure is not the same as an affirmative act of concealment, and as the cases set forth above make clear, nondisclosure is not enough to satisfy the "fraudulent concealment" prong of equitable tolling.

Second, the alleged failure to disclose the purported kickback on Edmondson's HUD-1 did not involve Defendants whatsoever. Rather, completing the HUD-1 was the legal responsibility of the settlement agent, Genuine Title. *See* 12 C.F.R. § 1024.8(b) ("The settlement agent shall complete the HUD-1").

Third, any alleged kickback was not required to be disclosed on Edmondson's HUD-1 because it was allegedly paid by Genuine Title, not Edmondson, and the HUD-1 only includes payments made by the borrower or seller. *See* 12 C.F.R. § 1024.8(b)(1) ("The settlement agent shall state the actual charges paid by the borrower and seller on the HUD-1, or by the borrower on the HUD-1A.").

Finally, Edmondson's references to the supposed elaborate payment scheme as being difficult to trace does not plausibly allege affirmative concealment with respect to Edmondson's loan. *See Mullinax*, 199 F. Supp. 2d at 329 ("even if a kickback scheme is generally secretive, it need not be so, and therefore it does not qualify as a self-concealing wrong"); *see also Pocahontas Supreme*, 828 F.2d at

218 (plaintiff's "averments that the defendants employed techniques of secrecy to avoid detection of the combination and conspiracy" are not enough to invoke equitable tolling).[12]

## B. All Claims Against Defendants Other Than Eagle Nationwide Mortgage Company Should Also Be Dismissed For Failure To State A Claim

Edmondson's Complaint frequently, and improperly, lumps *all* of the Defendants' alleged conduct together under the catch-all phrase the "Eagle Defendants," failing to differentiate among the various corporate entities named as Defendants throughout her pleading. *See, e.g.*, Complaint ¶¶ 1, 1, 3, 20, 23, 28, 40, 47-65, 71, 85-89. Yet the crux of Edmondson's Complaint is actually detailed in paragraph 62, which specifically alleges that *Eagle Nationwide Mortgage Company* referred Edmondson's loan to Genuine Title pursuant to an agreement that Genuine Title allegedly had with only one defendant, Eagle Nationwide Mortgage Company:[13]

> Eagle Nationwide Mortgage Company referred Plaintiff Edmondson to Genuine Title for title and settlement services in accordance with Genuine Title and Eagle Nationwide Mortgage Company brokers' agreement that the Eagle Defendants through its branch managers, brokers, loan officers and/or employees would receive Free Marketing Materials and/or Referring Cash as a quid pro quo for referrals to Genuine Title.

Complaint ¶ 62.

---

[12] Edmondson's passing reference, with no detail, that Defendants and Genuine Title "failed and refused to disclose their affiliated business arrangement" is also of no moment when it comes to her equitable tolling argument. First, the provision of an affiliated business arrangement disclosure is only required to the extent that a party intends to use it as an affirmative defense as set forth in RESPA Section 8(c)(4). *See* 12 U.S.C. § 2607(c)(4). It has no bearing on an equitable tolling analysis. Second, the document, if provided, would only disclose the existence of a business affiliation between Genuine Title and Eagle Nationwide Mortgage Company, not any description of a purported kickback scheme. *See* 12 C.F.R. § 1024.15(c) (defining "affiliate relationship" as "the relationship among entities where one entity has effective control over the other by virtue of a partnership or other agreement or is under common control with the other by a third entity or where an entity is a corporation related to another corporation as parent to subsidiary by an identity of stock ownership.").

[13] Edmondson also pleads that she "obtained a residential mortgage from *Eagle Nationwide Mortgage Company* through Adam Mandelberg in relation to the refinancing of her home." Complaint ¶ 62 (emphasis added).

Edmondson pleads that Eagle Nationwide Mortgage Company was a wholly-owned subsidiary of Eagle National Bank, *see* Complaint ¶ 6, but seeks to hold numerous other entities in the alleged corporate chain responsible for the purported misconduct of Eagle Nationwide Mortgage Company. Edmondson's attempt paints with far too broad a brush, and runs afoul of firmly established principles of corporate separateness.

The Supreme Court in *United States v. Bestfoods*, 524 U.S. 51 (1998), stated:

> It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries .... 'Neither does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate.'

*Id.* 524 U.S. at 61 (citations omitted). *Accord Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 349-50 (4th Cir. 1998); *In re American Honda Motor Co., Inc. Dealerships Relations Litig.*, 958 F. Supp. 1045, 1051 (D. Md. 1997) (corporate parent cannot be held liable for subsidiary's wrongful acts solely by virtue of its ownership and control over the subsidiary).

Edmondson fails to plausibly allege that any entity other than Eagle Nationwide Mortgage Company should be liable here. Accordingly, this Court should reject any attempt to hold the other Defendants' liable for alleged misconduct by an Eagle National Bank subsidiary. The implausibility of Edmondson's claim against Defendants other than Eagle Nationwide Mortgage Company is highlighted by her own pleading, which makes clear that the ESSA Defendants (ESSA Bancorp, Inc. and ESSA Bank & Trust) had absolutely no involvement in any of the facts alleged here, as those Defendants are seemingly included as defendants only by virtue of completing a merger with Eagle National Bank in December 2015. *See* Complaint ¶ 9.

Because Edmondson's non-conclusory factual allegations are limited to Eagle Nationwide Mortgage Company's relationship with Genuine Title, then separate and apart from the equitable tolling deficiencies, the Complaint should be dismissed against Eagle National Bank, Eagle National Bancorp, Inc., ESSA Bancorp, Inc. and ESSA Bank & Trust. *See, e.g., SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (complaint cannot rely on "indeterminate assertions against all defendants" and if a complaint "fails to allege particular facts against a particular defendant, then the defendant must be dismissed"); *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum [Federal Rule of Civil Procedure 8(a) pleading] standard.") And for the reasons fully set forth *supra* Section IV.A, the claim against Eagle Nationwide Mortgage Company should be dismissed as time-barred.

## V.    CONCLUSION

Defendants respectfully request that the Court issue an order dismissing the Complaint as time barred and with prejudice.

Dates: March 27, 2017

Respectfully submitted,

/s/ Brian L. Moffet
Brian L. Moffet, Esq. (Bar I.D. 13821)
Miles & Stockbridge, P.C.
100 Light Street
Baltimore, MD 21202
(410) 727-6464 (telephone)
(410) 385-3700 (facsimile)
bmoffet@milesstockbridge.com

George J. Krueger, Esq. (admitted *pro hac vice*)
Ryan T. Becker, Esq. (admitted *pro hac vice*)
Fox Rothschild LLP
2000 Market Street
20th Floor

Philadelphia, PA 19103-3222
215-299-2000 (telephone)
215-299-2150 (facsimile)
gkrueger@foxrothschild.com
rbecker@foxrothschild.com

*Attorneys for Defendants*

29

## **CERTIFICATE OF SERVICE**

I, Brian L. Moffet, hereby certify that on this 27th day of March, 2017, a copy of the foregoing was served upon all counsel of record via the Court's ECF filing system.

/s/ Brian L. Moffet
Brian L. Moffet, Esq.

30