# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARY E. EDMONDSON,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-16-3938 |
| **EAGLE NATIONAL BANK,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Class Action Complaint in this case alleges in one count that the Defendant financial institutions, Eagle National Bank, Eagle Nationwide Mortgage Company, Eagle National Bancorp, Inc., ESSA Bancorp, Inc., and ESSA Bank & Trust ("Defendants" or "Eagle National Defendants") violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), by entering into a kickback scheme whereby the Defendants received unearned fees from Genuine Title, LLC for referrals.

Now pending is the Defendants' Motion to Dismiss (ECF No. 11). This Court reviewed the parties' submissions and conducted a motions hearing on January 16, 2018.[1] For the reasons stated below, the Defendants' Motion to Dismiss (ECF No. 11) is GRANTED.

---

[1] At the request of counsel, this Court conducted a *consolidated* motions hearing for five cases related to Genuine Title's alleged kickback scheme with various financial institutions. (*See* Background, *infra*.)

1

# BACKGROUND

## I. *Fangman v. Genuine Title* (RDB-14-0081)

The alleged kickback scheme in this case involves Genuine Title, LLC ("Genuine Title"), which has an extensive history with this Court. In December 2013, Edward and Vickie Fangman (represented by the same counsel involved in this case) filed a complaint against Genuine Title involving essentially identical allegations in the Circuit Court of Baltimore County that was removed to this Court in January 2014. (*See Fangman v. Genuine Title, LLC*, Case No. RDB-14-0081 (D. Md.), at ECF No. 1 ("*Fangman*").) The Fangmans alleged that Genuine Title, in exchange for the referral of title services on their mortgage loan, paid kickbacks to loan brokers and provided "marketing materials for free or at a drastically-reduced rate (collectively 'Free Marketing Materials') for various loan officers who were part of the mortgage lending process." (*Fangman,* Compl. ¶¶ 19-23, ECF No. 2.)[2]

In 2014, Genuine Title went bankrupt, and Plaintiff's counsel, Smith, Gildea, & Schmidt, began to obtain access from Genuine Title's Receiver to the company's documents and records, including its computer servers. (*Edmondson*, Mem. 14, ECF No. 11-1.) In early 2015, Plaintiff's counsel used these records to identify and notify affected borrowers and prospective plaintiffs. (*Id.*) By June 2015, Plaintiffs' counsel was "able to pull data . . . that appears to represent . . . buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information." (*Fangman*, ECF No. 150-2 at 7.)

---

[2] Even prior to the *Fangman* suit, in December 2012, a putative class action alleging the same kickback scheme was filed against Genuine Title and a number of financial institutions. *Roach v. Wells Fargo Bank, N.A.*, Case No. WDQ-l2-03800 (D. Md.). The Plaintiffs in that case voluntarily dismissed their claims in April 2013. (*See* ECF Nos. 36, 37, 39.)

On January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions, including Eagle National Bank. (*See Fangman*, ECF No. 47.) That First Amended Complaint in *Fangman* alleged violations of RESPA, Maryland's state-law analog to RESPA, and the Maryland Consumer Protection Act. (*See id.*) The *Fangman* plaintiffs further alleged that Genuine Title and its affiliated marketing companies provided Free Marketing Materials and/or "Referring Cash" payments without disclosure on HUD-1 settlement documents. (*Id.* ¶ 3.)

Plaintiffs in *Fangman* filed a Second Amended Complaint on May 20, 2015, adding additional parties and clarifying some of their previous allegations. (*See Fangman*, ECF No. 138.) The Defendant Eagle National Bank filed a Motion to Dismiss on July 21, 2015. (*See Fangman*, ECF No. 167.) At oral argument before this Court in November 2015, Plaintiffs' counsel agreed that the *Fangman* Plaintiffs' RESPA claim against Eagle National Bank was time-barred. *See Fangman v. Genuine Title, LLC*, Case No. l4-cv-00081-RDB, 2015 WL 8315704 at \*6 n.11 (D. Md. Dec. 9, 2015).

In addressing motions to dismiss by other defendants in the *Fangman* case, this Court ruled that equitable tolling may be available under RESPA and that those Plaintiffs' claims were not time-barred. *Fangman*, 2015 WL 8315704, at \*7. In so holding, this Court applied the equitable tolling test from *Grant v. Shapiro*, 871 F.Supp.2d 462, 470, n.10 (D. Md. 1998) that provides, "a plaintiff must allege with specificity fraudulent concealment on the part of the defendants and the inability of the plaintiff, despite due diligence, to discover the fraud." *Fangman*, 2015 WL 8315704, at \*7 (citing *Grant*, 871 F.Supp.2d at 470, n.10). This Court applied that test in the *Fangman* action in the context of Plaintiff's counsel's significant investigatory efforts, which by June 2015 had successfully identified borrowers referred to

3

Genuine Title between 2006 through 2013. (*See* Mem. 15-16 (citing *Fangman*, 2016 WL 6600509, at *2 (D. Md. Nov. 8, 2016).) Accordingly, this Court found in December 2015 that facts had been sufficiently concealed from the *Fangman* plaintiffs, who did not know about their claim until contacted by counsel. *Fangman*, 2015 WL 8315704, at *7. In terms of due diligence, this Court found:

> Plaintiffs' counsel has undergone a large-scale review of Defendant Genuine Title's computer system. It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified. The Second Amended Complaint, filed by Plaintiffs' counsel, clearly states that "[a]ll Plaintiffs learned of the illegal kickbacks less than one year prior to filing of the [Second Amended] Complaint and could not have known about the Kickback Scheme until contacted by undersigned counsel." Second Am. Compl. at ¶ 94, ECF No. 138. In light of these unique circumstances, Plaintiffs have demonstrated that equitable tolling is warranted in this case and that all Plaintiffs, with the exception of the Eagle National Plaintiffs, brought their claims within one year of the date they could have first known of their cause of action through due diligence.

*Fangman,* 2015 WL 8315704, at *7.

Following discovery concerning Genuine Title's business practices and relationship with other lenders, some defendants (e.g., Wells Fargo, JP Morgan Chase, and PNC) have struck class settlements which have been the subject of public filings and class notices. (*See, e.g., Fangman*, ECF No. 479, Final Approval Order regarding PNC settlement.)

## II. Enforcement Actions by the federal Consumer Financial Protection Bureau ("CFPB") and Maryland Attorney General

Meanwhile, the Consumer Financial Protection Bureau ("CFPB") and the Maryland Attorney General initiated an enforcement action in this Court on January 22, 2015 against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. predicated on similar schemes involving Genuine Title. (*See CFPB v. Wells Fargo Bank, N.A.*, Case No. RDB-15-0179 (D. Md.) ("*Lender Enforcement Action*").) The pendency and ultimate settlement of the *Lender*

4

*Enforcement Action* in January 2015 was widely publicized. Specifically, the CFPB issued a press release on January 22, 2015, and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case. (*See Dobbins, et al. v. Bank of America*, *N.A.,* RDB-17-540 (D. Md.), ECF Nos. 17-3, 17-4.)[3]

The CFPB and Attorney General also filed an enforcement action on April 29, 2015 directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*See CFPB v. Genuine Title LLC*, Case No. RDB-15-1235 (D. Md.) ("*Genuine Title Enforcement Action*")). One of the defendants in this enforcement action was Adam Mandelberg (*Genuine Title Enforcement Action*, Compl. 1, 13, ECF No. 1), who Edmondson alleges in her Complaint was responsible for helping her obtain a loan and referring her to Genuine Title for settlement services (*see Edmondson*, Complaint at ¶¶ 60-61). The CFPB issued a press release on April 29, 2015 in which the CFPB outlined the enforcement action against Genuine Title based on the same facts alleged by the *Fangman* plaintiffs. On May 1, 2015, the CFPB and Maryland Attorney General announced a settlement with Genuine Title, and this Court entered a Stipulated Final Judgment and Order approving the settlement. (*See Genuine Title Enforcement Action*, ECF No. 18.) As with the *Lender Enforcement Action*, the *Genuine Title Enforcement Action* settlement was also reported by various news media outlets and other publications in May 2015. (*See Dobbins,* ECF No. 17-4.) The settlement orders in these enforcement actions explicitly contemplate related litigation by affected consumers (*see, e.g., Genuine Title Enforcement Action*, Genuine Title Order 5, ECF No. 18), but neither the Consumer Financial Protection Bureau nor the Office of the Attorney General of Maryland

---

[3] At the consolidated hearing in this case, *see* Background, Section IV, *infra*, this Court and the parties discussed and directly referenced press releases and an exemplar list of news articles that were attached as exhibits to the motions to dismiss in *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-540 (D. Md.) and *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.).

required that any financial institutions issue formal notices to the public (*see Lender Enforcement Action*, JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11).[4]

### III.   *Edmondson v. Eagle National Bank* (RDB-16-3938)

Plaintiff Mary Edmondson closed her loan on August 19, 2010 and filed this action against Eagle National Bank, Eagle Nationwide Mortgage Company, Eagle National Bancorp, Inc., ESSA Bancorp, Inc., and ESSA Bank & Trust ("Defendants" or "Eagle National Defendants") on December 8, 2016. (*Edmondson*, Compl., ECF No. 1.) This Complaint on behalf of Edmondson was filed over a year after Plaintiff's counsel agreed in *Fangman* that equitable tolling did not save the *Fangman* Plaintiffs' RESPA claim as to Eagle National Bank. *Fangman*, 2015 WL 8315704 at *6 n.11. Plaintiff Edmondson seeks to represent the following proposed class:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. $ 2602) from, or originated by, Eagle National Bank or Eagle Nationwide Mortgage Company for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014.

(Compl. ¶ 67.) The Complaint alleges that Adam Mandelberg helped her to obtain a residential mortgage from Eagle Nationwide Mortgage Company and referred her to Genuine Title for title and settlement services. (*Id.* ¶¶ 60-64.) The Complaint also names as defendants a number of other entities allegedly in Eagle Nationwide Mortgage Company's corporate chain. (*Id.* ¶¶ 8-11.) Ultimately, the Defendants filed the currently pending Motion to Dismiss. (ECF No. 11.)

---

[4] Plaintiff's counsel's oral argument to the contrary is belied by the plain text of the settlement orders.

## IV. Consolidated Hearing on Motions to Dismiss

Plaintiff's counsel, who has been in possession of Genuine Title's records since 2014 and who processed the data – including buyers' names – by June 2015, has filed the following seven class actions against other lenders who, like the defendants in *Fangman*, allegedly engaged in kickback schemes with Genuine Title.

1. *Edmondson v. Eagle National Bank, et al.,* Civil Case No. RDB-16-3938 (D. Md.)
2. *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-540 (D. Md.)
3. *Callum v. Priority Financial Services*, Civil Case No. RDB-17-0623 (D. Md.)
4. *James v. Acre Mortgage & Financial*, Civil Case No. RDB-17-1734 (D. Md.)
5. *Baugh, et al. v. The Federal Savings Bank*, Civil Case No. RDB-17-1735 (D. Md.)
6. *Ryman v. First Mortgage Corporation*, Civil Case No. RDB-17-1757 (D. Md.)
7. *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.)

On October 31, 2017, Miles & Stockbridge, defense counsel in both *Edmondson* (RDB-16-3938) and *Bezek* (RDB-17-2902), requested a consolidated hearing on ripe motions to dismiss. (*Edmondson*, ECF No. 20.) Plaintiffs' counsel, Smith, Gildea & Schmidt, agreed to a consolidated hearing for the ripe motions to dismiss in five of the seven cases – namely, *Edmondson* (RDB-16-3938); *Dobbins* (RDB-17-540); *James* (RDB-17-1734); *Baugh* (RDB-17-1735); *Bezek* (RDB-17-2902). (*Edmondson*, ECF No. 21.)[5] Generally, the motions to dismiss in these five cases present statute of limitations and equitable tolling issues. On January 11, 2018, counsel for the Eagle National Defendants submitted a letter withdrawing their challenge to successor corporate liability for the purposes of the motion to dismiss only. (ECF No. 20.) This Court conducted the requested consolidated hearing on January 16, 2018.

---

[5] Plaintiff's counsel requested that *Callum* (RDB-17-0623) and *Ryman* (RDB-17-1757) be addressed separately. (*Edmondson*, ECF No. 21.) *Callum* is currently stayed pending settlement-related discovery. (*See Callum*, ECF No. 10.) *Ryman* "involves complex successor liability and jurisdictional issues not present in most of the other cases." (*Edmondson*, ECF No. 21.)

7

# STANDARD OF REVIEW

## I. Rule 8(a)(2) and Rule 12(b)(6) Generally

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotations and citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Statute of Limitations & Equitable Tolling

A 12(b)(6) motion is an appropriate vehicle through which the Court may evaluate the affirmative defense of the statute of limitations "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Even if a statute of limitations defense appears to have merit based upon the face of the complaint, a Court may exercise its equitable authority to toll the statute of limitations.[6] *Fangman*, 2015 WL 8315704, at *7 (citing *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1630 (2015); *Grant v. Shapiro & Burson, LLP, et al.*, 871 F. Supp. 2d 462, 470 n.10 (D. Md. 2012)). In *Menominee Indian Tribe of Wisconsin v. United States*, 136 S.Ct. 750 (2016), a *unanimous* United States Supreme Court held that equitable tolling requires the plaintiff to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 136 S.Ct. at 755 (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010). The Supreme Court emphasized these two requirements as "elements, not merely factors of indeterminate or commensurable weight." 136 S.Ct. at 756 (internal quotation marks omitted) (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). While Plaintiff argues that *Menominee's* test does not control this action because it is limited to the habeas context, (Mem. Opp'n 5, ECF No. 17-1), the Supreme Court in *Menominee* applied the test to a contracts case, and the decision admits of no exceptions to the test's applicability. Furthermore, the Fourth Circuit applied the *Menominee* test to a tax appeal claim in *Cunningham v. Commissioner of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (unpublished). Other circuits have applied the *Menominee* test in numerous other contexts as well. *E.g., Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 907-10 (7th Cir. 2016) (Sherman Act claim); *Villarreal v. R.J. Reynolds Tobacco Co., Pinstripe, Inc.*, 839 F.3d 958, 970-73 (11th Cir. 2016) (age discrimination claim).[7]

---

[6] As this Court confirmed in *Fangman*, equitable tolling applies to RESPA claims. *Fangman,* No. CV RDB-14-0081, 2015 WL 8315704, at *7 (citing *Kwai Fun Wong*, 135 S.Ct. at 1630; *Grant.*, 871 F. Supp. 2d at 470 n.10 (D. Md. 2012)).
[7] In applying this test to the facts of the *Menominee* case, the Supreme Court found "no extraordinary circumstances" and therefore it had no need to "decide whether the Tribe was diligently pursuing its rights." 136 S.Ct. at 757, n.5.

The Supreme Court has held that "the diligence prong . . . covers those affairs within the litigant's control." 136 S.Ct. at 756. This element requires "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. The second element "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee,* 136 S.Ct. at 756. In other words, the circumstances must combine to render "critical information . . . undiscoverable." *Gould v. U.S. H.H.S*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc). Courts have consistently held that fraudulent concealment by the defendant is a circumstance that may justify equitable tolling. *E.g., Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 7l F.3d 119, 122 (4th Cir. 1995); *Grant*, 871 F.Supp.2d at 470, n.10.

The United States Court of Appeals for the Fourth Circuit has emphasized that "equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Cunningham v. Comm'r of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (internal quotation marks omitted). Federal courts employ equitable tolling "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), as it is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

## **DISCUSSION**

The Plaintiff concedes that RESPA's one-year statute of limitations would bar this lawsuit, which was filed more than six years after the Plaintiff closed her loan and a year and a half after Plaintiff's counsel processed Genuine Title's data. However, the parties dispute

10

whether equitable tolling saves her claim. The Defendants also contest the sufficiency of the allegations as to Eagle National Bancorp and Eagle National Bank.[8]

## I. Materials Considered

As an initial matter, Defendants ask this Court to consider materials that are not integral to the Complaint (e.g., court filings in the *Fangman* and CFPB and Maryland Attorney General enforcement actions). The Plaintiff acknowledges that this Court may take judicial notice of "items or matters in the public record," but claims that Defendants "abuse this exception" by citing to documents related to *other* lenders. (Mem. Opp'n 4-5, ECF No. 17-1.)

In considering a motion under Rule 12(b)(6), a district court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). This Court may take judicial notice of "docket entries, pleadings and papers in other cases," *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (4th Cir. May 6, 2016), as well as "newspaper articles, analysts' reports, and press releases," *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013); *accord Sha v. GenVec Inc.*, No. DKC-12-00341, 2013 WL 5348133, *1 n.2 (D. Md. Sept. 20, 2013). The rule against hearsay does not bar materials offered to establish the date of public notice rather than the truth of the matter asserted. *See In re Human Genome*, 933 F. Supp. 2d at 758.

---

[8] By letter dated January 11, 2018, Defendants withdrew their challenge to successor liability for the purposes of the pending Motion to Dismiss only (ECF No. 20.), but they maintain that the Complaint fails to state a claim against Eagle National Bancorp and Eagle National Bank. (*See* Mem. 26-28, ECF No. 11-1; Reply 14-19, ECF No. 18.)

This Court finds that the court filings and news articles offered by the Defendants will help resolve the question of equitable tolling, so there is no "abuse" of the rule permitting courts to consider such materials. The consideration of these materials does not transform this Motion to Dismiss into one for summary judgment. *See Tellabs,* 551 U.S. at 322 (2007); *Philips*, 572 F.3d at 180.

## II. Equitable Tolling

### A. Due Diligence

The parties have devoted considerable briefing and oral argument to disputing the content of the due diligence requirement in the wake of *Menominee*, 136 S.Ct. 750. Defendants argue that *Menominee* raised the bar to require affirmative acts of diligence even if the plaintiff had no inquiry notice of the need to pursue her rights in the first place. In response, the Plaintiff notes language in the Fourth Circuit opinion in *Supermarket of Marlinton* permitting a plaintiff to satisfy that diligence requirement by establishing that she "was not (and should not have been) aware of facts that should have excited further inquiry." 71 F.3d at 128. Defendants argue that inquiry notice, which is part of the discovery rule, "has no place in a RESPA statute of limitations decision." (Reply 6, ECF No. 18 (citing *Mullinax v. Radian Guar., Inc.,* 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002); *Macauley v. Estate of Nicholas,* 7 F. Supp. 3d 468, 487 n.16 (E.D. Pa. 2014)).)

The parties further disagree on whether the efforts and knowledge of Plaintiff's counsel may stand in for the Plaintiff's own diligence to fulfill whatever level of diligence is required after *Menominee*. Plaintiff asserts that she cannot be charged with the knowledge of her own attorneys "*before she ever retained or was contacted by counsel*". (Mem. Opp'n 14, ECF No. 17-1.) If judged by Plaintiff's own conduct, Defendants assert that the Complaint does not

include "*any* allegation of *any* specific inquiry or diligence." (Mem. 7, ECF No. 11-1.) Defendants ask this Court to follow *Cunningham v. M&T Bank Corp.,* 814 F.3d 156 (3d Cir. 2016), in rejecting the "lawerly intervention" theory and in finding that Plaintiff's participation in the loan transaction does not by itself fulfill due diligence.

Even if Plaintiff can establish that she was "pursuing [her] rights diligently," *Menominee*, 136 S.Ct. at 755, with or without credit for her counsel's actions, this Court cannot ignore the role Plaintiff's counsel has played in determining the timing of this action – and the other pending cases related to the Genuine Title kickback scheme. In June 2015, Plaintiff's counsel had access to Genuine Title's "buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information," (Mem. 15, ECF No. 11-1), information sufficient to uncover the scheme in this case. Even if Plaintiff's counsel's knowledge is not relevant to the due diligence analysis, counsel's in-depth investigation into Genuine Title's records certainly bears heavily on the question of whether "extraordinary circumstances" stood in Plaintiff's way and prevented timely filing. *Menominee*, 136 S.Ct. at 755.

**B. Extraordinary Circumstances**

In an effort to establish the "extraordinary circumstances" element, the Plaintiff asserts that "affirmative misrepresentations on HUD-1 forms constitute independent acts of concealment," (Mem. Opp'n 8, ECF No. 17-1 (citing *In re Community Bank of No. Va. Mortg. Lending Prac. Litig., PNC Bank N.A.*, 795 F.3d 380, 403 (3d Cir. 2015)), and that the Defendants entered into "fraudulent, back-dated sham title services agreements" to further conceal the kickback scheme. (Mem. Opp'n 6.) At oral argument, Plaintiff claimed that the Defendants' *ongoing* failure to disclose the true nature of its relationship with Genuine Title

13

by sending notices to all customers known to have used Genuine Title's services constitutes an act of *continued* concealment by the Defendant. Under these circumstances, Plaintiff contends that she has satisfied the extraordinary circumstances element because she "could not have known of the kickback scheme before she was contacted by counsel on April 20, 2016." (*Id.* 10.)

The Defendants' initial Memorandum in support of the Motion to Dismiss argues that Plaintiff failed to plead fraudulent concealment with particularity, especially when nondisclosure or mere silence is insufficient to warrant equitable tolling of a RESPA violation claim. (Mem. 23, ECF No. 11-1 (citing *Minter v. Wells Fargo Bank, N.A.*, 924 F. Supp. 2d 627, 642 (D Md. 2013); *Kay v. Wells Fargo & Co.,* 247 F.R.D. 572, 577 (N.D. Cal. 2007); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009)).) Defendants argue that Plaintiff's "theory re-writes RESPA and makes her counsel – and not the terms of the legislation passed by Congress – the master of the RESPA statute of limitation" (Mem. 3.)

Even assuming *arguendo* that the initial HUD-1 non-disclosure and alleged "sham" agreements establish fraudulent concealment with sufficient particularity,[9] the circumstances causing Plaintiff's delay were not "extraordinary" nor were they "beyond [her] control." *Menominee,* 136 S.Ct. at 756. Plaintiff's counsel filed suit against Eagle National Bank back in January 2015 and has acknowledged that it had extensive data by June 2015. Accordingly, the Defendant's alleged continuing fraudulent concealment was simply not the only circumstance delaying the filing of this lawsuit. In spite of this fact, Plaintiff argues that this Court should focus on the Defendants' "ongoing" failure to broadly notify customers of a

---

[9] This assumption is consistent with this Court's holding in *Fangman*, 2015 WL 8315704, at *7.

potential claim related to Genuine Title. Plaintiff's view of equitable tolling essentially demands that this Court order Defendants, and similarly situated lenders, to send out such notices to stop the ongoing equitable tolling of any RESPA claim by any Genuine Title customer. This theory swallows RESPA's one-year statute of limitations, which was set by Congress, and asks this Court to regulate lenders in a way that was specifically not requested by those federal and state enforcement agencies that have actively investigated Genuine Title and its associated financial institutions. (*See Lender Enforcement Action* (RDB-15-0179), JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11.)[10]

Furthermore, the Defendants' alleged concealment effort did not "st[and] in [Edmondson's] way" up until the time she was contacted by counsel. *Menominee*, 136 S.Ct. at 755. In other words, it was easily *within the Plaintiff's control* to discover a basis for her action in May 2015 at the latest,[11] almost a year prior to being contacted by counsel on April 20, 2016 and far more than one year prior to the filing of the Complaint on December 8, 2016. *See id.* at 756. Unlike in the *Fangman* case, the Plaintiff in this case could have discovered a substantial amount of public information on Genuine Title's illegal scheme that was brought to light through the *Fangman* and enforcement litigation. The publicly available information was sufficiently specific and applicable to the Plaintiff that contact by counsel was not the

---

[10] Plaintiff's counsel's oral argument to the contrary is belied by the plain text of the settlement orders.
[11] This time period is when the *Genuine Title Enforcement Action* settlement was reported by various media outlets and publications (*see Dobbins,* ECF No. 17-4), but this Court notes that Edmondson's claims may have been discoverable even earlier. In January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions, including Eagle National Bank. (*See Fangman*, ECF No. 47.) On January 22, 2015, the CFPB and the Maryland Attorney General issued a press release regarding their joint enforcement action against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. (*Dobbins*, ECF No. 17-3.), and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case (*see Dobbins*, ECF No. 17-4). In April 2015, the CFPB and Attorney General filed an enforcement action directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. One of the defendants in this enforcement action was Adam Mandelberg, Edmondson's mortgage broker. (*Genuine Title Enforcement Action*, RDB-15-1235, ECF No. 1).

only method by which she could have learned of her claim. While Plaintiff contends she was unaware of the *illegal* nature of the relationship Genuine Title and the Eagle National Defendants, she does not disclaim knowledge of having used (a) Genuine Title for title and settlement services, (b) Adam Mandelberg as a broker, or (c) Eagle Nationwide Mortgage Company as a lender. (*Edmondson*, Compl ¶¶ 60-61, ECF No. 1.) Public information indicated that all three were potentially involved in an illegal kickback scheme. The First Amended Complaint in the *Fangman* action named Eagle National Bank as a defendant. (*Fangman*, RDB-14-0081, ECF No. 47.) Both Genuine Title and Adam Mandelberg were defendants in the *Genuine Title Enforcement Action* (*see* RDB-15-1235, ECF No. 1), which produced public court records and publicly available news coverage (*see Dobbins*, ECF No. 17-4).

The Plaintiff has made no allegation that the Defendants' actions or a lack of access to public records, news, the internet, TV, or a phone placed such information outside her reach. She merely argues that she was not yet on "notice" of the need to search for such information. The issue of notice, however, is not relevant to the extraordinary circumstances analysis, which asks whether the circumstances combine to render "critical information, *reasonable investigation notwithstanding,* undiscoverable." *Gould*, 905 F.2d at 745–46 (emphasis added); *see also Supermarket of Marlinton*, 7l F.3d at 122 (requiring the plaintiff to show that it "failed to discover those facts within the statutory period, despite . . . the exercise of due diligence"). To consider notice or only that quantum of information discoverable by Plaintiff's reasonable diligence would essentially ignore the Supreme Court's holding in *Menominee,* 136 S.Ct. at 756, that diligence and extraordinary circumstances are two distinct elements. The Fourth Circuit's use of "notwithstanding" in *Gould*, 905 F.2d at 745–46, and

16

"despite" in *Supermarket of Marlinton*, 7l F.3d at 122, underscore that these elements must exist *simultaneously*, with the extraordinary circumstances placing the discovery of critical information entirely outside the Plaintiff's control.

In *Fangman*, this Court found that the Defendant's concealment efforts contributed to "unique" circumstances warranting equitable tolling, *Fangman*, 2015 WL 8315704, at *7, but the Plaintiff here also seeks equitable tolling of a RESPA claim based upon Genuine Title's kickback practices. Plaintiff's claim for equitable tolling is not "unique" let alone "extraordinary" when the underlying claims and concealment efforts are nearly identical and when the prior Genuine Title litigation and subsequent media coverage rendered critical information discoverable.

Plaintiff has not demonstrated that her case presents one of "those rare instances where . . . it would be unconscionable to enforce the limitation period against [her] and gross injustice would result." *Cunningham*, 2018 WL 460854, at *2. Plaintiff's counsel has already secured significant awards for their efforts to hold Genuine Title and other financial institutions accountable for violating RESPA. (*See, e.g., Fangman*, Final Approval Order regarding Wells Fargo settlement, ECF No. 411.) Genuine Title went bankrupt, and Plaintiff does not allege that the Defendants continue to receive illegal kickback payments through deceiving Plaintiff or her fellow class members. Plaintiff alleges that between 2009 and 2014 she and other class members were "deprived of impartial and fair competition between settlement service providers in violation of RESPA and [were] forced to pay more for [their] settlement services" because Genuine Title used a portion of each settlement payment to generate a $300 to $600 kickback to Adam Mandelberg for each referral. (Compl. ¶ 65; Zukerberg 3/28/16 Aff. ¶ 4, Compl. Ex. 8, ECF No. 1-9.) While the purported class may

17

have some interest in accountability and financial compensation, Congress firmly expressed an interest in providing certainty to the real estate market when it set the RESPA statute of limitations at one year.[12] Given this context, it would not be unconscionable or grossly unjust to enforce RESPA's one-year statute of limitations. To hold otherwise would make "[Plaintiff's] counsel—and not the terms of the legislation passed by Congress—the master of the RESPA statute of limitation." (Mem. 3, ECF No. 11-1.)

The Plaintiff therefore fails to fulfill the extraordinary circumstances element required to equitably toll her claim. *Menominee,* 136 S.Ct. at 756. Plaintiff proffers no amendment to the pleadings that could overcome this conclusion, and no amount of discovery would aid this Court's analysis of Plaintiff's claim for equitable tolling. As Plaintiff has failed to establish the extraordinary circumstances element, this Court need not determine whether the Plaintiff was diligently pursuing her rights. *Menominee*, 136 S. Ct. at 757, n.5. While the parties here earnestly contest the content of the due diligence requirement in the wake of *Menominee,* this Court finds no reason to address those contentions. This Court also need not reach the Defendant's substantive arguments regarding (a) the sufficiency of the allegations as to the corporate entities related to Eagle Nationwide Mortgage Company (*see* Mem. 26, ECF No. 11-1) or (b) whether the alleged kickbacks fall under RESPA's safe harbor for payments for "services actually performed" (*see* Reply 14, ECF No. 18).

---

[12] Compare, for example, the State of Maryland's three-year statute of limitations for civil actions such as fraud or personal injury claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

## **CONCLUSION**

For the reasons stated above, the Defendants' Motion to Dismiss (ECF No. 11) is GRANTED.

A separate Order follows.

Dated: January 29, 2018

\_\_\_/s/_____
Richard D. Bennett
United States District Judge