# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARY E. EDMONSON,** | **Civil Action No.: 1:16-CV-03938-SAG** |
| Plaintiff, | |
| v. | |
| **EAGLE NATIONAL BANK, et al.** | |
| Defendants. | |

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF NOTICE PLAN AND PROPOSED FORM OF NOTICE

111211\000001\4851-1626-5714.v1

## **TABLE OF CONTENTS**

**Page**

BACKGROUND ........................................................................................................................ 1

LEGAL ANALYSIS .................................................................................................................. 3

I.    NOTICE SHOULD BE LIMITED TO THE 1,533 INDIVIDUALS THAT MEET THE CLASS DEFINITION CERTIFIED BY THIS COURT ........................................... 4

II.    IF NOT INAPPROPRIATE, INDIVIDUAL NOTICE TO PLAINTIFF'S UNSUBSTANTIATED AND EXPANDED LIST IS AT LEAST PREMATURE .......... 9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Carlough v. Amchem Prods., Inc.*,
   158 F.R.D. 314 (E.D. Pa. 1993) ......................................................................................... 5

*Castano v. Am. Tobacco Co.*,
   162 F.R.D. 112 (E.D. La 1995) ........................................................................................ 10

*In re Domestic Air Transp. Antitrust Litig.*,
   141 F.R.D. 534 (N.D. Ga. 1992) ......................................................................................... 5

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................................ 4

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) .............................................................................................. 9

*Hamilton v. Am. Corrective Counseling Servs., Inc.*,
   2007 WL 1395592 (N.D. Ind. May 10, 2007) .................................................................... 9

*Jermyn v. Best Buy Stores, L.P.*,
   2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) .................................................................. 4, 5

*McKinney v. U.S. Postal Serv.*,
   292 F.R.D. 62 (D.D.C. 2013) ........................................................................................... 10

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................................ 4

*Pierce v. Novastar Mortg., Inc.*,
   2007 WL 505670 (W.D. Wash. Feb. 12, 2007) ........................................................ 4, 9, 10

*Ramcharan v. A.F.L. Quality, Inc.*,
   2015 WL 4275534 (D.N.J. Apr. 14, 2015) ......................................................................... 9

*Schneider v. Chipotle Mexican Grill, Inc.*,
   2019 WL 1512265 (N.D. Cal. Apr. 8, 2019) .................................................................. 4, 5

*Yeoman v Ikea U.S. West, Inc.*,
   2013 WL 5944245 (S.D. Cal. Nov. 5, 2013) .................................................................. 4, 5

**Statutes**

12 U.S.C. § 2602 ........................................................................................................................ 1

# TABLE OF AUTHORITIES
(continued)

**Page**

**Other Authorities**

12 C.F.R. § 1024.10(e)..................................................................................................................2

Fed. R. Civ. P. 23....................................................................................................3, 4, 9, 10

*Manual for Complex Litigation* § 30.211 ....................................................................................4

111211\000001\4851-1626-5714.v1

**BACKGROUND**

On May 21, 2020, this Court granted Plaintiff's[1] motion to certify a class.  The certified class comprises:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) from, brokered or originated by, Eagle National Bank or Eagle Nationwide Mortgage Company[2] for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2007, and January 31, 2011.  Exempted from this class is any person who, during the period of January 1, 2007 through January 31, 2011, was an employee, officer, member and/or agent of Defendants Eagle National Bank, Eagle Nationwide Mortgage Company, ESSA Bank & Trust, Genuine Title LLC, Brandon Glickstein, Inc., and/or Competitive Advantage Media Group, LLC.

ECF No. 78 at 2.

As part of its certification motion, Plaintiff attached what it called an "Eagle Class Loan Spreadsheet."  ECF No. 57-9.  According to Plaintiff, this spreadsheet "was generated from Genuine Title's Title Express loan processing software and was a list of all loans that were assigned and referred by Eagle National Bank and/or Eagle Nationwide Mortgage Company (the "Eagle Defendants") under the kickback agreements alleged in the Complaint."  ECF No. 115 at 2.  The spreadsheet includes a list of 3,496 names but presence on this list does not establish that any individual actually qualifies for class membership.  Indeed, the spreadsheet is riddled with errors, as even Plaintiff concedes that at least 1,205 entries refer to loans that never closed for various reasons—including the borrower's decision to work with a different lender altogether, *see id.* at 2, n.1—or loans that "closed outside of the time period of the Eagle Class," *id*. at 3.

---

[1] The motion refers to both "Plaintiff," singular, and "Plaintiffs," plural, while also stating that there is only one named plaintiff and class representative. *See* ECF No. 115 at 1. As this Court clarified in its Memorandum Opinion granting class certification, the latter is correct. ECF No. 81 at 1 n.1, 7. For sake of clarity, Defendants will use the singular.

[2] These two entities are collectively referred to herein as the "Eagle Defendants".

1

The parties worked to identify loans falling within the class definition. Defendants have identified 1,533 transactions for which they have HUD-1 forms that reflect Genuine Title's settlement services in Section 1100.[3] The parties agree that those individuals should be mailed individual notice of the class action.

But Plaintiff also wants to add two additional groups of individuals without Defendants' support. First, Plaintiff wants to send individual notice to 265 individuals whose potential class membership, Plaintiff admits, has not been confirmed.[4] ECF No. 115 at 4. For these individuals, Plaintiff hopes to prove their membership in the class at some unknown point in the future through not-yet-served subpoenas to the Defendants' "secondary market partners" or through agencies, like HUD and the VA, that "guarantee[] or insure[]" such loans. *Id.*

---

[3] Plaintiff suggests that there should be more HUD-1s, arguing that Defendants "incomplete production" is "inconsistent with [their] Initial Disclosures." ECF No. 115 at 2 n.2. But, as specifically quoted in the motion, Defendants represent merely that they "can produce … nonprivileged documents from the relevant time period." Plaintiff reads far too much into this statement to claim that Defendants represented that HUD-1s exist for every individual listed on the spreadsheet or that Defendants are in possession of all of the HUD-1s. Moreover, Plaintiff is once again improperly using confidential dispute resolution communications in support of her motion. The production that Plaintiff is referring to was made during the course of mediation and solely for purposes of facilitating a potential settlement, yet Plaintiff is using that production to accuse Defendants of withholding documents, which simply is not the case.

Even if some HUD-1s are, in fact, missing, that does not evidence bad faith. After all, implementing regulations of the Real Estate Settlement Procedures Act require lenders to "retain each completed HUD-1 … and related documents for five years after settlement" and, for an even shorter period of time, if "the lender disposes of its interest in the mortgage and does not service the mortgage." 12 C.F.R. § 1024.10(e). The loans at issue in this case settled more than 6 years and, in some instances, as many as 11 years before this action was filed.

[4] Plaintiff states that Defendants "withdrew from the settlement conference" while the parties were attempting to clarify whether a group of 265 individuals met class definition. ECF No. 115 at 4. Defendants disagree with this statement and again object to Plaintiff's improper disclosure of confidential dispute resolution communications in violation of Judge Sullivan's Order (ECF No. 91) and Local Rule 607.4—something that appears to be an unfortunate habit. *See* fn. 3, *supra, and* ECF No. 112.

Plaintiff also proposes to send notice to an additional group of 454 individuals.[5] Unlike the 265, Plaintiff asserts that she has "confirmed" their membership through means other than HUD-1s, ignoring the fact that the presence of a HUD-1 reflecting settlement services rendered by Genuine Title is the touchstone of membership in the certified class. *Id.* at 2-3. But Plaintiff has failed to supply any supporting documentation for the vast majority despite Defendants' requests. Plaintiff has, instead, only provided documentation regarding 50 borrowers in an attempt to support this inflated figure. Only a handful of HUD-1s were included, and many of the remaining documents lack critical details to establish these individuals' qualifications for class membership—including the omission of Genuine Title and/or Eagle Defendants altogether. Many of these transactions could not be located in Eagle's records at all.

Defendants oppose the inclusion of both groups of individuals and support only the mailing of notice to the 1,533 borrowers that meet the class definition certified by this Court.

## **LEGAL ANALYSIS**

Defendants do not dispute that the 1,533 individuals for whom it identified HUD-1s should receive individual notice under Rule 23(c)(2). But Plaintiff's motion seeks to expand notice well beyond the certified class by adding more than 700 individuals for which no HUD-1s have been found. Plaintiff's request to provide these additional individuals with notice of the class action is improper. Plaintiff has never established that these individuals are (or are likely to be) class members, leaving this Court with little more than a couple of lists of names and the bald assertion that they potentially may be members of the class and should receive notice. Because Plaintiff failed to show her proposed expanded list would provide notice to a substantial

---

[5] This figure is the difference between the 1,987 transactions that Plaintiff claims she "positively confirmed" (ECF No. 115 at 3) and the 1,533 transactions that actually satisfy the definition of the class certified by this Court (ECF No. 78 at 2).

number of actual class members, individual notice to the expanded list is inappropriate. At the very least, any such notice is premature, and should be postponed until Plaintiff can establish whether any of these additional individuals are members of the class (notwithstanding the absence of a HUD-1) and moves to modify the class definition accordingly.

**I.   NOTICE SHOULD BE LIMITED TO THE 1,533 INDIVIDUALS THAT MEET THE CLASS DEFINITION CERTIFIED BY THIS COURT.**

Rule 23(c)(2)(B) requires Plaintiff to provide absent class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Although the Rule emphasizes the importance of individual notice where practicable, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974) (describing this as an "unambiguous requirement" in the Rule), it also clarifies that this is not a one-size-fits-all standard. To the contrary, "the type of notice to which a member of a class is entitled [under Rule 23(c)] depends upon the information available to the parties about that person," *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977)—a question left to the court's discretion, *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (quoting *Manual for Complex Litigation* § 30.211, at 223).

Courts have repeatedly observed that individual notice is "improper" where the proposed list of recipients is "overly broad or overinclusive." *Schneider v. Chipotle Mexican Grill, Inc.*, 2019 WL 1512265, at *2 (N.D. Cal. Apr. 8, 2019); *see also Yeoman v Ikea U.S. West, Inc.*, 2013 WL 5944245, at *5 (S.D. Cal. Nov. 5, 2013). Courts require plaintiffs to "exercise reasonable efforts to ascertain which [individuals] are class members before providing notice of the class action." *Pierce v. Novastar Mortg., Inc.*, 2007 WL 505670, at *3 (W.D. Wash. Feb. 12, 2007). And they routinely reject proposed lists of individuals that do not fit within the class definition.

*E.g. Schneider*, 2019 WL 1512265, at *4; *Yeoman*, 2013 WL 5944245, at **5-6 (citing cases); *Jermyn*, 2010 WL 5187746, at **6-7 (S.D.N.Y. Dec. 6, 2010).

Notably, the courts in these cases frequently acknowledge that some of the individuals in rejected lists may, in fact, be class members. *See, e.g.*, *Schneider*, 2019 WL 1512265, at *3 (acknowledging this possible "overlap"). But they nevertheless reject the proposals because they fail to "assure that notice to the list would *definitely result* in notice to a *substantial number* of class members." *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 546 (N.D. Ga. 1992) (emphasis added); *see also Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 327 (E.D. Pa. 1993) ("[I]t is not necessary to send individual notices to an overinclusive group of people simply because that group contains some additional class members whose identities are unknown." (citing cases)).

The class definition here is straightforward. It consists of individuals who received mortgage loans "from, brokered or originated by, Eagle National Bank or Eagle Nationwide Mortgage Company for which Genuine Title provided a settlement service, *as identified in Section 1100 on the HUD-1*" between 2007 and 2011. ECF No. 78 at 2 (emphasis added). 1,533 individuals meet this class definition. These are all individuals who, as required by this Court, have a HUD-1 for a loan "from, brokered or originated by, Eagle National Bank or Eagle Nationwide Mortgage Company" and that reflects a settlement service provided by Genuine Title in Section 1100. Individual notice to these individuals is clearly appropriate.

But Plaintiff's list of additional individuals simply does not target members within the class. A close inspection of Plaintiff's methodology makes this clear: Plaintiff proposes that the Court start with a list of transactions "generated from Genuine Title's Title Express loan processing software" that lists "all loans that were assigned and referred by" Eagle. ECF No.

115 at 2. She then proposes to include 454 individuals from this list who are not within the class definition but whose loans Plaintiff claims have been "confirmed" closed. *Id.* That "confirmation" has apparently come in one of four ways: (1) "public land records" which identified mortgages or deeds of trust "recorded on or around the settlement date" in the spreadsheet; (2) "land research by private abstractors" identifying the same information; (3) subpoenaed loan documents from third party lenders that purportedly purchased Eagle loans; and (4) an electronic database's record of dates that notes associated with deeds of trust or mortgages were executed, when those dates occurred "at or near the date of settlement" in the spreadsheet. *Id.* at 2-3.

As a preliminary point, such "confirmations" do not include any reference to HUD-1s, an essential element of Plaintiff's class definition and the one certified by this Court. As the above class definition requires, a class member must have a HUD-1 that identifies a settlement service provided by Genuine Title "in Section 1100." Indeed, Plaintiff highlighted this feature in her class certification briefing when arguing that the class definition was ascertainable. Plaintiff argued that the proposed class "ha[d] clear definition with objective criteria" because "each member of the Eagle Class received settlement services from Genuine Title, as identified from a particular section of a standardized, legally required government form, the HUD-1." ECF No. 57-1 at 20. Plaintiff herself also clarified that HUD-1s were essential for her damages calculation, asserting that "[e]ach Class member is entitled to a statutory measure of damages tied to the settlement charges reflected on each HUD-1." *Id.* at 34. Plaintiff's decision to ignore this mandated characteristic of the class definition in her efforts to increase the size of the class by almost 50% is proof enough that Plaintiff's proposal is inappropriate.

There are problems with this analysis regardless, beginning with its starting point, the Genuine Title spreadsheet. Plaintiff does not attempt to prove that this list of transactions provides an accurate list of loans from potential class members—despite conceding that no less than 1,205 entries (about 34% of the list) are irrelevant. The remaining entries should not be accepted at face value. To the contrary, Defendants have reviewed these entries and found no records of those loans, aside from the entries for which HUD-1s exist, suggesting strongly that the remaining entries on the spreadsheet do not accurately reflect transactions involving individuals who should be members of the class.

Plaintiff knows Defendants' misgivings about these entries well; Defendants have repeatedly expressed their concerns. Yet Plaintiff has made scant effort to confirm the spreadsheet's accuracy—or to even explain why it should be trusted. Instead, Plaintiff asks the Court to presume the entries reflect transactions that would establish class membership, regardless of requirements of the class definition that Plaintiff herself proposed and that this Court accepted when certifying the class. But the spreadsheet is a fundamentally untrustworthy guide, and should not be afforded such automatic deference.

Even if the Court were to accept this premise—and it should not—Plaintiff's attempts to confirm the spreadsheet's entries still fail. First, Plaintiff has never disclosed the vast majority of purportedly confirmatory data alluded to in Plaintiff's motion. Nor did Plaintiff attach any records—not even an affidavit—to her motion for the Court's consideration. To date, Plaintiff has provided to Defendants documentation relating to just 50 alleged borrowers that purportedly "confirm" the transactions. The bulk of these documents are not the mandated HUD-1s, but rather recorded deeds of trust lacking an indication that the Eagle Defendants and Genuine Title were both involved in the loan.

And even if Plaintiff had submitted these "proofs," they would not have been probative of class membership.  By Plaintiff's admission, these documents and records provide evidence that the underlying loan *closed*.  She does not clarify whether the closed loan was for a loan *assigned and referred by Eagle* as opposed to another lender.  Plaintiff concedes this is a possibility in her motion when clarifying that 1,205 agreements referencing Eagle in Genuine Title's spreadsheet might not have closed, admitting it's possible that "the borrower chose to pursue a loan from a different lender" in such cases.  ECF No. 115 at 2, n.1.  Yet Plaintiff's proposed alternative documentation shows at most that a loan "closed" at or around the date listed in the Genuine Title spreadsheet.  It does not indicate whether the loan closed with "a different lender."  Plaintiff fails to even grapple with this possibility; instead, she relies solely on the fact that the alternative evidence of closing—either a settlement date from a land records search or the "registered note date" found on an electronic database—occurred "on or around" (without specifying what "around" means) a date recorded in Genuine Title's spreadsheet.

Worse still, Plaintiff's list includes 265 entries that Plaintiff concedes she has *not* "confirmed."  Instead, Plaintiff provides a brief outline of her "plans" to do so, which includes subpoenas on "Eagle's secondary market partners" that she speculates might turn up pertinent documents, as well as some form of search for documents "from the Veteran's Administration ("VA"), Department of Housing and Urban Development (HUD) or other government agency that guarantees or insures the loan and maintains records related to the transaction."  ECF No. 115 at 4.  In other words, Plaintiff has no idea where these records are—or even if they exist.  The only assurance she can provide to the Court is that she will begin her fishing exhibition soon.  (Why she had not started before filing this motion is unexplained.)  There is simply no basis for sending these individuals notice either.  In short, Plaintiff plainly has not "exercise[d]

reasonable efforts to ascertain which [individuals] are class members before providing notice of the class action." *Pierce*, 2007 WL 5065670, at *3.  As a result, she provides this Court a list without offering any assurance that even a single recipient of the proposed expanded class notice will be an actual class member.  Numerous courts have rejected individual class notice under these circumstances.  This Court should do the same and limit the mailing of notice only to the 1,533 borrowers that actually meet the certified class definition.[6]

## II. IF NOT INAPPROPRIATE, INDIVIDUAL NOTICE TO PLAINTIFF'S UNSUBSTANTIATED AND EXPANDED LIST IS AT LEAST PREMATURE.

If the Court does not outright reject Plaintiff's proposal (which it should), it should at the very least exercise its discretion to deny Plaintiff's request for class notice in its entirety until such time as Plaintiff is able to establish whether any of the individuals in the two additional groups identified in Plaintiff's motion are members of the class, notwithstanding the absence of HUD-1s.  As one court explained, Rule 23 simply "does not specify when that notice must be issued.  Rather, the timing of the notice is left to the discretion of the court, which may decide to postpone notice where circumstances permit." *Ramcharan v. A.F.L. Quality, Inc.*, 2015 WL 4275534, at *2 (D.N.J. Apr. 14, 2015).  When exercising that discretion, courts weigh the prejudice to the parties, *id.*, as well as the interest of judicial economy, *Hamilton v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 1395592, at *2 (N.D. Ind. May 10, 2007).

---

[6] Indeed, Plaintiff's motion undermines the ascertainability and manageability of the class itself.  The multi-step investigation in which she engaged to try to generate even this scant "evidence" for additional class members—which do not include HUD-1s—strongly suggests that it is manifestly too complicated and highly individualized to ascertain membership in Plaintiff's expanded class.  *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("[I]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." (internal quotation omitted)).

Relevant here, deferring notice is appropriate after class certification where there remains a possibility that the scope of the certified class may change, certification may be reversed, or additional class members may be found. *See, e.g.*, *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) (deferring class notice by six months, because "added time will allow [plaintiff's] counsel to locate more accurate information for many other previously 'unfound' class members, which, in turn, will help to ensure that the notice ultimately issued constitutes the 'best notice practicable' under the Federal Rules"); *Castano v. Am. Tobacco Co.*, 162 F.R.D. 112, 117-18 (E.D. La 1995) (staying class notice pending ruling on petition for interlocutory appeal); *Pierce*, 2007 WL 1046914, at *3 ("Because the Court may decertify or redefine the class . . . and because Federal Rule 23 requires that the Class Notice include the 'definition of the class certified,' sending class notice at this juncture would be premature.").

Plaintiff has made no evidentiary showing whatsoever—either to the Court or to Defendants—to prove the individuals lacking HUD-1s but to whom she nevertheless wishes to send class notice are, in fact, class members. To allow individual notice to go forward based purely on such speculation is improper and at the very least premature. To the extent the Court is willing to give Plaintiff a "second bit at the apple", Plaintiff must actually prove her assertions and, if she can, present evidence that she has truly "found" more than 700 additional class members.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion to the extent she seeks to send class notice to groups of individuals whose potential class membership is purely speculative, and order notice be mailed only to the 1,533 borrowers that meet the certified class definition.

Dated: July 19, 2021

                        Respectfully submitted,

                        /s/ Brian L. Moffet
                        Brian L. Moffet, Esq. (Bar I.D. 13821)
                        Miles & Stockbridge, P.C.
                        100 Light Street
                        Baltimore, MD 21202
                        (410) 727-6464 (telephone)
                        (410) 385-3700 (facsimile)
                        bmoffet@milesstockbridge.com

                        Jeremy D. Mishkin, Esq. (admitted *pro hac vice*)
                        Montgomery McCracken Walker & Rhoads LLP
                        1735 Market Street, 21st Floor
                        Philadelphia, PA 19103-3222
                        215-772-1500 (telephone)
                        215-731-3883 (facsimile)
                        jmishkin@mmwr.com

                        *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I, Brian L. Moffet, hereby certify that on this 19th day of July, 2021, a copy of the foregoing was served upon all counsel of record via the Court's ECF filing system.

/s/ Brian L. Moffet<br>
Brian L. Moffet, Esq.

111211\000001\4851-1626-5714.v1