IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MARY E. EDMONDSON, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. SAG-16-3938** |
| **EAGLE NATIONWIDE MORTGAGE COMPANY** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this long-pending class action involving alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, Plaintiffs have filed a motion to substitute Suzanne "Tracy" Neal as class representative. ECF 222. This Court has reviewed the motion, opposition, reply, and the exhibits attached thereto. *See* ECF 225, 228. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, Plaintiffs' motion will be GRANTED and Plaintiffs will be afforded two weeks to file an Amended Complaint substituting Ms. Neal as the class representative.

I.      **FACTUAL BACKGROUND**

The basic allegations in this case are that employees of defendant Eagle Nationwide Mortgage Company ("ENMC") received kickbacks from a title service company, Genuine Title, in exchange for referrals of hundreds of loans for title settlement services. In December, 2016, a single named plaintiff, Mary Edmondson, filed the Complaint in this case. ECF 1. An Amended Complaint filed in December 2019 listed three named plaintiffs: Ms. Edmondson, Chemene Clark,

and Janet Clark. ECF 55. Janet Clark subsequently withdrew due to health issues. ECF 63 at 7 n.1.[1]

ENMC challenged the standing of both Ms. Edmondson and Chemene Clark during the class

certification proceedings in 2020. ECF 63. In response, Plaintiffs proposed the substitution of Ms.

Neal as a putative class representative. ECF 70. In an opinion issued on May 21, 2020, this Court

determined that Ms. Edmondson had standing, and declined to address the question of Chemene

Clark's standing or to permit the substitution of Ms. Neal as a new class representative, because

this Court's finding of Ms. Edmondson's standing rendered such steps unnecessary. ECF 77. This

Court stated that it would consider substitution of a new class member "if it becomes necessary at

a later date." ECF 81 at 8 n.4.

In 2023, Defendants moved for summary judgment and to decertify the class. ECF 165,

166. This Court ultimately granted summary judgment as to all defendants except a single

now-dissolved defendant, ENMC, and denied decertification of the class, but amended the class

definition in a way that excluded Ms. Edmondson as a member. ECF 188. Because a substantial

class remained without a class representative, this Court afforded Plaintiffs 30 days to provide

notice of a proposed substitute. *Id.* Plaintiffs again identified Ms. Neal as their substitute class

representative, and Ms. Neal underwent discovery, including interrogatories, requests for

production of documents, and two depositions. ECF 216. The instant motion ensued.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 21 provides "[o]n motion or on its own, the court may at

any time, on just terms, add or drop a party." Accordingly, courts "routinely allow the substitution

of a new class representative after the original representative has been disqualified." *McKandes v.*

*Carefirst, Inc.*, Civ. No. AW-04-743, 2006 WL 8457129, at *6 (D. Md. June 12, 2006) (collecting

---

[1] All page pincites refer to the ECF number in the header rather than the number in the footer.

cases); *see also Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981) (finding that a plaintiff could not properly represent the class because her claims were time-barred, but remanding the case to permit other plaintiffs whose claims were not time-barred to "present themselves to the court" as proper class representatives).

The typicality requirement in Rule 23 requires that "claims or defenses of representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This prerequisite "goes to the heart of a representative parties' [sic] ability to represent a class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). For that reason, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67. The representative plaintiff's claims "need not be 'perfectly identical or perfectly aligned'" with other class members' claims, but "the representative's pursuit of his own interests 'must simultaneously tend to advance the interests of the absent class members.'" *Ealy v. Pinkerton Gov't Servs. Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (unpublished) (quoting *Deiter*, 436 F.3d at 466). This analysis "tend[s] to merge" with the adequacy analysis. *See Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). In that analysis, a putative class representative must illustrate that she will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).

III.    ANALYSIS

ENMC's opposition to Plaintiffs' motion to substitute spends its first four pages essentially seeking reconsideration of this Court's decision to deny decertification and permit a substitute class representative to be named. ECF 225. This Court persists in its view that its determination in that regard was appropriate and declines to reconsider it in this context.[2]

Given this Court's prior rulings in this case, it would be difficult for ENMC to contest Ms. Neal's standing to bring this case or her membership in the class as amended. Ms. Neal refinanced her mortgage loan twice with ENMC in transactions where settlement services were performed by Genuine Title, and the rates she paid in both instances exceeded the 80th percentile amount on the Wells Fargo Chart described in ECF 188. *See* ECF 159-5 (chart showing that the 80th percentile threshold for title services fees in Maryland is $497); ECF 223-1 (Ms. Neal's 2008 HUD-1 statement reflecting a title search charge of $500 and a title examination charge of $325, totaling $825 in title services fees); ECF 223-3 (Ms. Neal's 2010 HUD-1 statement reflecting a title service charge of $650 and a title examination charge of $250, totaling $900 in title services fees).

ENMC's specific arguments relating to whether Ms. Neal should be substituted focus solely on whether she is an adequate class representative. ENMC challenges her adequacy for three primary reasons: (1) she lacked candor in her deposition testimony; (2) she lacks sufficient personal knowledge about the facts, claims, and defenses in the case and abdicated her responsibilities to

---

[2] ENMC's argument focuses on *China Agritech Inc. v. Resh,* 584 U.S. 732 (2018), a case about reviving a class action following a denial of class certification or a decertification of an existing class. Neither of those things happened in this case, because this Court declined to decertify the class, and instead, permitted Plaintiffs to identify a substitute class representative.

her counsel; and (3) she destroyed the loan documents she intends to use to prove her equitable

tolling claim.[3] ECF 225. Each argument will be addressed in turn.[4]

### A. Lack of Candor at Deposition

ENMC argues that Ms. Neal "lacked candor in her deposition testimony regarding basic

facts underpinning her claims." ECF 225 at 9. And courts have determined that a putative class

representative may be inadequate where they had given "inconsistent testimony on material issues

in the litigation in a way that might jeopardize his credibility with the factfinder at trial."

1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:68 (6th ed.); *see also Savino v Computer*

*Credit Inc.,* 164 F.3d 81, 87 (2d Cir. 1998) (affirming a denial on adequacy grounds where the

proposed representative "offered differing accounts about the letters that form the very basis for

his lawsuit [that] surely would create serious concerns as to his credibility at any trial").

While Ms. Neal's deposition testimony may have provided ENMC with ample ammunition

for cross-examination at trial, this Court does not find that it rises to the level of "serious concerns

as to credibility" or "differing accounts" about "the very basis for" the lawsuit. First, Ms. Neal

came to her second deposition with several pages of notes she took during conversations with

---

[3] This Court also rejects the notion that Ms. Neal failed to vigorously pursue a role as a named plaintiff in this litigation. Ms. Neal volunteered, as early as 2020, to be substituted as a named plaintiff, and this Court denied her the opportunity in its (largely futile) efforts to move this case most expeditiously towards final resolution. It would have made little sense, given this Court's expressed position, for Ms. Neal to seek to intervene.

[4] ENMC also argues that Ms. Neal should be disqualified because she has not yet filed a complaint with the Court despite counsel's representation in April that she would do so within two weeks. ECF 225 at 8-9. This Court disagrees, because consistent with its procedure in a related case, Ms. Neal's amended complaint can be filed after this Court's ruling on this motion to avoid additional complication on the docket. This Court notes, however, that in the future, adherence to promises made in open court would avoid further disputes in this already dispute-prone case. If counsel represents in court that they will take a certain action within a particular time, they should either follow through or write to advise why they will not do so.

counsel regarding how to answer questions. ECF 225 at 10–11. Those notes do not reflect a lack of candor so much as an effort to provide adequate answers to questions that call for information largely determined by counsel, not Ms. Neal herself. Second, Ms. Neal repeatedly declined to provide a positive identification of her own signature on the loan documents underlying her claims and on her discovery responses in this case. While that overly cautious approach may cause her some issues on cross-examination, this Court does not consider a lack of firm recollection to create the kind of "serious concerns as to credibility" to render a proposed representative inadequate.

### B.  Insufficient Personal Knowledge

ENMC next argues that Ms. Neal's deferential responses to various discovery questions indicates that she lacks sufficient personal knowledge to be an adequate class representative. ENMC tries to analogize Ms. Neal to the proposed class representatives in two out-of-circuit cases, *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir. 1987) and *Bodner v. Oreck Dircte, LLC,* 2007 WL 122377, at *2 (N.D. Ill. 1977), using those courts' analyses of the appropriate adequacy standards. But this Court finds more instructive the analysis that the Fourth Circuit, and district courts within the Fourth Circuit, have employed. For example, in *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380 (4th Cir. 2009), the district court had made findings that the proposed representative "had little interest in or knowledge and understanding of the case, and appeared to be merely lending his name to the suit." 579 F.3d at 385. The evidence before the district court reflected that the representative "(1) was unaware of the suit and only learned the suit was filed in his name after reading about the lawsuit in the newspaper; (2) said the class attorneys would not return his calls; and (3) believed the lawsuit made him look bad." *Id.* On that record, the Fourth Circuit found that the district judge had not abused its discretion in denying class certification. *Id.*

Similarly, in *Burton v. Chrysler Group LLC*, Civ. No. 8:10-00209-MGL, 2012 WL 7153877 (D.S.C. Dec. 21, 2012), one of the proposed class representatives testified "that he did not understand that he represents other people in this case and was not looking for anyone else to get any money out of his pocket because of his problems." 2012 WL 7153877, at *7. The other proposed representative testified "that no one has ever explained to him the costs and benefits of a class action versus an individual action, he did not understand that this case is a class action, and he did not know whether he had any duties as class representative." *Id.* The *Burton* court deemed those representatives to be inadequate. *Id.*

In contrast to those proposed representatives, who expressed either a complete lack of understanding of the role of a class representative in a class action or an outright reluctance to fulfill the role, Ms. Neal appears competent and willing to serve. She was able to explain the basic facts underlying the litigation. ECF 226 at 31:6–11, 119:11–19. She described the harm she and the other class members suffered as inflated closing costs paid to Genuine Title. *Id.* at 35:22–36:20. And she explained that the class representative does the "heavy lift for the other plaintiffs in the class," for example, by sitting for deposition and fulfilling other requirements. *Id.* at 140:5–141:2.

In *Gunnells v. Health Plan Servs., Inc.,* 348 F.3d 417, 430 (4th Cir. 2003), the Fourth Circuit addressed a similar contention that a prospective class representative lacked sufficient knowledge of the case. It reasoned:

> The lack of knowledge contention is particularly meritless. It is hornbook law, as the district court recognized, that "[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." J.A. 1256 (quoting 32B Am. Jur. 2d Federal Courts § 1888 (1996) (footnotes omitted)); *see also Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) ("The Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–74 (1966) expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance.").

*Id.* Similarly, in *Benway v. Res. Real Est. Servs., LLC,* 239 F.R.D. 419, 425 (D. Md. 2006), this

Court stated:

> Rule 23 does not require the representative plaintiffs to have extensive knowledge of the intricacies of litigation, rather, the named plaintiffs must have a general knowledge of what the action involves and a desire to prosecute the action vigorously. 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1766 (3d ed. 2005). Here, the Benways have offered deposition testimony which supports their contention that they have a general understanding of the litigation, that they are knowledgeable about their loan transaction, and that they have a desire to pursue the litigation vigorously.[5] Thus, the Benways satisfy Rule 23's test for adequacy.

Like the Benways, Ms. Neal has offered deposition testimony evidencing a comprehensive

understanding of the purpose of the class action and her anticipated role in it, along with a sufficient

general understanding of the facts of the case. She has amply demonstrated her willingness to

participate and to represent the group's interests. This Court finds no suggestion that she would be

an inadequate representative.

### C. Destroyed Documentation

Ms. Neal conceded at her deposition, when pressed, that she had "shredded" her loan

documents years ago when she moved her residence. ECF 226 at 169:10–13. The records that the

parties have compiled do not include Ms. Neal's 2010 Good Faith Estimate ("GFE"), which would

have shown the estimated title services costs disclosed to Ms. Neal before the closing. ENMC

posits that if the numbers on Ms. Neal's HUD-1 differ from what had been represented in her GFE,

---

[5] ENMC tries to distinguish this case from *Benway* on the grounds that "while the plaintiffs there showed a distinct lack of familiarity with their claims, they still appeared to be in control of the litigation and were not merely lending their names to the case." ECF 225 at 16. This Court cannot ascertain what facts suggest greater "control of the litigation" by the Benways as compared to the control exercised by Ms. Neal.

Ms. Neal may have been on notice of a potential claim in 2010 and would not be entitled to equitable tolling of the statute of limitations.

Of course, ENMC is free to advance that argument at trial. And contrary to its belief, ENMC may point to the record to support that argument, namely, Ms. Neal's HUD-1 statement which references the GFE amount. ECF 223-3 at 6. In response, Ms. Neal will offer evidence applicable to the entire class: testimony from the witnesses involved in the kickbacks who will testify that those kickbacks were never disclosed on any loan document – either GFEs or HUD-1s; and the backdated Title Services Agreement prepared when regulators began investigating Genuine Title. The "missing" 2010 GFE, then, is not dispositive as to whether Ms. Neal can establish entitlement to equitable tolling on the basis of fraudulent concealment, and is not a basis for deeming her an inadequate class representative.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Substitute Class Representative, ECF 222, is GRANTED. Plaintiffs will have two weeks to file an Amended Complaint substituting Ms. Neal as the class representative. This Court will issue a separate Order which will include the date and time of a telephonic scheduling conference.

Dated: June 17, 2024

_____/s/_____
Stephanie A. Gallagher
United States District Judge