**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MARY E. EDMONDSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-16-3938 |
| EAGLE NATIONAL BANK, *et al.,* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The already complex procedural history of this eight-year-old case has developed a new, unfortunate layer of complexity. The case involves a class of borrowers who had federally related loans serviced by Defendant Eagle National Mortgage Company ("ENMC"). As the case proceeded, this Court ruled that the original named plaintiff, Mary E. Edmondson, could pursue her individual claim but was not a member of the class subject to certification. ECF 187, 188. As a result, Edmondson's individual claim was severed for trial and the class identified a new named Plaintiff, Suzanne Neal. In that same opinion and order, this Court also granted partial summary judgment in favor of two defendants, Eagle National Bank ("ENB") and ESSA Bank & Trust ("ESSA"), finding that Plaintiffs had failed to establish those entities' liability for the acts of ENMC under veil piercing and alter ego theories. *Id.*

Plaintiffs have now filed a motion pursuant to Rule 60(b)(3), seeking to vacate the portion of this Court's earlier opinion granting summary judgment in favor of ENB and ESSA and asking this Court to set a schedule for re-briefing summary judgment on the issue of their liability. ECF 252. Defendants opposed the motion, ECF 255, and Plaintiffs filed a reply, ECF 260. In accordance

with this Court's order, the parties filed additional documents relevant to consideration of this motion, ECF 262, 264, 265. Each side then filed supplemental briefing, ECF 267, 268. This Court held a hearing on November 13, 2024. For the reasons stated herein, Plaintiffs' motion will be granted.

## I.    FACTUAL BACKGROUND

In 2019, Plaintiffs issued requests for production of documents to Defendants, seeking in pertinent part, "copies of any contract(s) or agreement(s) for the brokering, purchase, sale, and/or trade of residential mortgage loans … during the time period of January 1, 2007 to March 1, 2012, and to which Eagle National Bank and/or Eagle Nationwide Mortgage Company was a party." ECF 255 at 2.

Defendants responded by producing responsive documents, along with the following objection:

> Defendants specifically object to this Request on the grounds that it is overly broad, vague, seeks documents unrelated to the claims and defenses in this case, and is not proportional to the needs of the case. First, the time period in this Request is overly broad. The class period alleged in the Complaint does not even begin until January 1, 2009, so requests for documents prior to that date are irrelevant to the claims at issue in this litigation. Second, the Request is overly broad, not proportional, and seeks documents unrelated to the claims and defenses in the case because it seeks various types of mortgage-related agreements between Eagle National Bank and/or Eagle Nationwide Mortgage Company and 107 different entities, where none of these other entities are mentioned anywhere in the Complaint. There are no allegations that all of these entities were involved in an alleged kickback scheme with Genuine Title as alleged in the Complaint.

ECF 255 at 2 n.2.

Despite interposing only that objection, Defendants unilaterally chose to limit their responsive document production to agreements between ENMC only and third parties. They did not produce any otherwise responsive agreements between ENB and third parties (hereinafter "ENB Agreements"), and they did not produce any such agreements involving ENMC, ENB, and

third parties (hereinafter "ENB/ENMC Agreements"). They also did not tell Plaintiffs that their responsive production had been limited in that manner.

In 2020, Plaintiffs learned of the existence of an agreement between Westar and ENB that would have been responsive to the 2019 document request. ECF 252-6. They asked Defendants to produce it, and Defendants obliged. *Id.* In or before 2022, Plaintiffs also learned, through a filing in a different case, of an ENB Agreement (between Wells Fargo and ENB) that had not been produced in this case.

In 2024, in yet another lawsuit pending before United States District Judge Julie R. Rubin, *Wilson, et al. v Eagle Nat'l Bank, et al.*, No. 20-cv-1344-JRR, the plaintiffs obtained through discovery a series of ENB Agreements and ENB/ENMC Agreements that were never produced in this case. Those agreements came from the files of the law firm that had been representing Defendants at the time of Plaintiffs' original discovery requests in 2019. Because Plaintiffs' counsel in this case also represent the plaintiffs in Judge Rubin's case, this motion ensued.

## II.    ANALYSIS

To prevail on a Rule 60(b)(3) motion, the movant must make a showing in three parts. Specifically, "(1) the moving party must have a meritorious [claim or] defense, (2) the moving party must prove misconduct by clear and convincing evidence, and (3) the misconduct prevented the moving party from fully presenting its case." *Schultz v. Butcher*, 24 F.3d 626, 630 (1994). If the movant proves those three elements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts to determine within its discretion whether relief is appropriate in each case." *Id.* (citing *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)).

Beginning with the first factor, a meritorious claim or defense, the Fourth Circuit has specifically ruled that the movant need not "show that the undisclosed evidence would have changed the trial outcome in order to demonstrate the meritorious nature of his claim." *Morgan v. Tincher*, 90 F.4th 172, 191 (4th Cir. 2024). In fact, Rule 60(b)(3)'s focus is on "judgments which were unfairly procured," simply requiring a showing that "wrongful secretion of discovery material makes it inequitable for the withholder to retain the benefit of the verdict." *Schultz*, 24 F.3d at 631 (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.10 (1st Cir. 1988))..

The claim Plaintiffs seek to advance using the withheld documents is their attempt to hold ENB liable for the conduct of ENMC and its employees, which would potentially allow Plaintiffs to recover from ESSA through ESSA's subsequent assumption of ENB's liabilities. Plaintiffs' efforts to attribute ENMC's conduct to its parent company face some significant hurdles, including "a strong presumption in Pennsylvania against piercing the corporate veil," *Mortimer v. McCool*, 255 A.2d 261, 268 (Pa. 2021), and a requirement to demonstrate "illegitimate purposes" for the alter ego theory to be invoked, *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994) (internal citations omitted). Plaintiffs also espouse some seemingly novel legal concepts, such as their suggestion that ENB may have entered a joint venture with its own subsidiary, ENMC. Despite some of the uphill battles, it is abundantly clear that, had Plaintiffs had access to the ENB and ENB/ENMC documents now in their possession, their arguments opposing Defendants' summary judgment motion would have looked very different. In fact, this Court specifically noted in granting summary judgment for ENB and ESSA that Plaintiffs "proffer[ed] almost no evidence gleaned through targeted discovery in this case." ECF 187 at 44. Unbeknownst to this Court at that time, Plaintiffs had been unfairly deprived of pertinent evidence that they sought to obtain via targeted discovery. While this Court certainly could not find, at this stage, that

4

"the undisclosed evidence would have changed the trial outcome," Plaintiffs' liability theories do not obviously lack merit and the judgment, premised in part on the absence of relevant discovery, was "unfairly procured." Plaintiffs should be afforded a chance to make their arguments with the benefit of full responsive discovery.

Next, this Court considers the second factor: whether Plaintiffs have established, by clear and convincing evidence, that Defendants wrongfully secreted the agreements at issue during discovery in this case. And this Court concludes that they did. There is no question (and the parties do not dispute) that the ENB Agreements and ENB/ENMC Agreements were responsive to Plaintiff's document request in 2019, which asked for "copies of any contract(s) or agreement(s) for the brokering, purchase, sale, and/or trade of residential mortgage loans … during the time period of January 1, 2007 to March 1, 2012, and to which Eagle National Bank *and/or* Eagle Nationwide Mortgage Company was a party …." ECF 255 at 2 (emphasis added). Defendants objected to the request on several grounds, without drawing any distinction between ENB and ENMC. *Id.* Then, subject to those objections, they decided to produce responsive broker agreements "to which only ENMC was party." *Id.*. In other words, Defendants decided to limit the production in a certain way without advising Plaintiffs that the production had been so limited.

Arguing that the documents were not "wrongfully secreted," Defendants contend that they were not "obviously pertinent requested discovery material" because Plaintiffs had not properly raised the issue of ENB's liability in their Complaint. The quote is derived from the *Schultz* case, which involved a boating accident. *See* 24 F.3d 630. The Fourth Circuit considered the plaintiff's failure to produce the Coast Guard Investigative Report, which implicated a party other than the named defendant in the accident. *Id.* at 630. The Court held "that an adverse party's failure, either

inadvertent or intentional, to produce such obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)." *Id.*

Initially, this Court disagrees with Defendants' apparent contention that, after *Schultz,* only withholding of "obviously pertinent requested discovery material" can amount to Rule 60(b)(3) misconduct. The *Schultz* court determined that in the case of such material, no intent would be required to show misconduct, but left open the possibility that intentional withholding of other, less obviously pertinent material could still constitute misconduct. 24 F.3d at 630–31 And the withholding in the instant case appears indisputably intentional — Defendants drew a particular "line in the sand" and produced material only up to that line, without informing Plaintiffs of the decision or the omitted material.

Regardless, this Court is unpersuaded that the disputed materials in this case fall outside the "obviously pertinent" category. Defendants correctly note that Plaintiffs' Complaint had not specifically used the terms "vicarious liability" or "alter ego." The Complaint does say, however, "Eagle National Bank through its wholly owned subsidiary Eagle Nationwide Mortgage Company was engaged in the business of consumer mortgage brokering and/or lending and/or otherwise transacted business in Maryland and elsewhere." ECF 1 ¶ 6. The Complaint therefore alleges that ENB was engaged in the conduct "through" its subsidiary, suggesting a vicarious liability-type theory. Plaintiffs had the burden, because of those allegations, to establish the relationships between those entities to recover. And because of the withholding, they did not obtain documentation that, at least in their view, would allow them to prove their claim.

This Court's analysis then turns to the third factor: whether Plaintiffs have shown that Defendants' misconduct prevented them from fully presenting their case. This Court is unpersuaded by Defendants' arguments that Plaintiffs (1) should have recognized, from the two

isolated documents they discovered in 2020 and 2022, that Defendants had failed to produce an entire subset of responsive documents and should have pursued them more actively; and (2) should have taken more depositions to explore whether Defendants had withheld additional documents. The problem is, Defendants never clarified that they were withholding all agreements to which ENB was a party, or which involved ENMC and some other entity. Defendants offer no support for their repeated assertion that, "Plaintiff recognized that Defendants had only produced brokering agreements between ENMC and third parties." ECF 255 at 2. It is true that on two subsequent occasions, Plaintiffs learned of the existence of single agreements, involving the sale of loans by ENB, that had not been produced. It is quite common for parties to discover pieces of evidence inadvertently omitted from discovery productions. But those discoveries in this case did not fairly alert Plaintiffs to the fact that Defendants had withheld a full half of the documents responsive to their original document request. The discovery burden did not shift to Plaintiffs to ferret out the wrongfully withheld materials.

It is true that Plaintiffs conducted somewhat sparse discovery in this case, declining to depose any representatives of ENMC or ENB. They conducted one deposition of a Wells Fargo deponent who had been cross-noticed. Ultimately, this Court is persuaded that, had Plaintiffs received the documentation they requested in 2019, their discovery strategy would have been different and they would have presented more compelling arguments on the liability of ENB and ESSA at the summary judgment stage of this case. Accordingly, Defendants' misconduct prevented Plaintiffs from fully presenting their case.

Finally, this Court is charged with balancing the finality of the judgment against the interests of justice. As this Court noted at the hearing, it is loath to further delay an eight-year-old case to allow pursuit of arguments that have evident weaknesses and, at least in part, a heightened

standard that must be met to prevail. That said, however, under the principles governing Rule 60(b)(3) motions, the judgment in favor of ENB and ESSA was procured unfairly, through concealment of responsive records that should have been produced half a decade ago. Plaintiffs' arguments regarding veil piercing and alter ego theories are not frivolous, despite the significant hurdles they have to clear. And it would simply be unjust to reward the successful concealment of responsive records by prioritizing the finality of the judgment over the full and fair opportunity for the Plaintiffs to present their contentions. As the Fourth Circuit has noted, "the fairness and integrity" of the fact-finding process "is of greater concern" than the finality of a judgment. *Schultz*, 24 F.3d at 631. This Court should not bless Defendants' questionable discovery tactic just because it succeeded for many years. Instead, Plaintiffs should have had the opportunity to try to convince this Court of their position, using all of the evidence they appropriately requested in discovery back in 2019.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's Rule 60(b)(3) Motion for Relief from Judgment, ECF 252, will be granted. The portion of this Court's August 18, 2023, Memorandum Opinion and Order granting summary judgment for ENB and ESSA will be vacated. ECF 187, 188. Defense counsel are reminded of their still-ongoing obligation to supplement their 2019 discovery responses with any responsive documents they have not produced. Plaintiffs are afforded two weeks to submit a detailed proposal for additional limited discovery they seek to take relating to the newly acquired documents, and a schedule for taking that discovery and re-briefing summary judgment. This Court will then schedule a teleconference with the parties to discuss the proposal and any effect it will have on the presently scheduled trial dates in this case.

Dated: November 20, 2024

_____/s/_____
Stephanie A. Gallagher
United States District Judge