IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MARY E. EDMONDSON, *et al.*,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil No.: SAG-16-3938 |
| v. | * | |
| | * | |
| **EAGLE NATIONAL BANK, *et al.*,** | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before this Court is Plaintiffs' "Motion for Leave to Amend the Complaint to Add Party Plaintiffs and Appoint Them as Class Representatives." ECF 315. This Court has reviewed the motion for leave to amend, along with the opposition and the reply. ECF 316, 317. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, Plaintiff's motion will be DENIED.

I.   BACKGROUND

The basic allegations in this long-pending class action case are that employees of defendant Eagle Nationwide Mortgage Company ("ENMC") received kickbacks from a title service company, Genuine Title, in exchange for referrals of hundreds of loans for title settlement services. Relevant procedural history follows.

In December, 2016, a single named plaintiff, Mary Edmondson, filed the Complaint in this case. ECF 1. In July, 2019, this Court approved a scheduling order providing a November 1, 2019 deadline for the joinder of additional parties or the amendment of pleadings. ECF 39. After this Court granted Plaintiffs leave to file an amended complaint "to modify the putative class definition

and to add additional plaintiffs and class representatives," ECF 53, Plaintiffs filed their first "Amended Class Action Complaint" on December 6, 2019. ECF 55.

In August, 2023, this Court issued an order amending the original definition of the class in a way that excluded the original named plaintiff and class representative, Mary Edmondson, and requiring the Plaintiffs to identify a new class representative by September 15, 2023. ECF 188. As part of a joint status report, the Parties prepared a discovery schedule for the new class representatives, which provided for discovery to be completed by December 15, 2023, ECF 189 ("Deadline to Complete Deposition(s) of Substitute Class Representative(s)"); this schedule was approved by this Court on September 6, 2023. ECF 191. After Plaintiffs identified three possible substitute class representatives, ECF 192, this Court issued an order providing that the parties would move forward with discovery as to Susanne Neal as class representative. ECF 196 (September 15, 2023 Order confirming the results of telephone conference held the same day).

Ms. Neal underwent substantial discovery, including interrogatories, requests for production of documents, and two depositions. ECF 216. On April 23, 2024, Plaintiffs filed their Motion to Substitute Class Representative, ECF 225, which this Court granted on June 17, 2024. ECF 231. Plaintiffs filed their Second Amended Complaint shortly thereafter, ECF 241, 245; Defendants answered that amended complaint on July 10, 2024. ECF 250. On December 13, 2024, this Court issued an order regarding the scheduling of the jury trial of Ms. Neal and the class claims, in which it identified November 21, 2025 as the deadline for submissions of a joint pretrial order, motions *in limine*, proposed voir dire questions, proposed jury instructions, and proposed special verdict forms; December 22, 2025 as the date of the pretrial conference; and January 12, 2026 as the date of commencement of trial. ECF 277.

At the same time Plaintiffs' counsel has been litigating the instant case, they were litigating multiple other cases in front of this Court, also concerning similar alleged kickback schemes. In February, 2025 pre-trial conferences for each of those cases, this Court raised concerns regarding potential issues related to class representation both in those cases and in the instant case; the Court reminded the Parties of those concerns in a May 27, 2025 telephone conference regarding the instant case. Two months later, on July 25, 2025, Plaintiffs filed their "Motion for Leave to Amend the Complaint to Add Party Plaintiffs and Appoint Them as Class Representatives." ECF 315.

## II.    ANALYSIS

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

However, because Plaintiffs are seeking leave to amend well after the deadline for amendment provided by the scheduling order, the liberal Rule 15 standard must be weighed against the requirements of Federal Rule of Civil Procedure 16(b)(4), which reads, "A schedule may be modified only for good cause and with the judge's consent."

Defendants argue that Plaintiffs' motion for leave to amend should be denied for multiple reasons, including that Plaintiffs filed the motion years after the deadline for joinder of additional parties or amendment to the pleadings and months after this Court alerted Plaintiffs to possible class representation issues, that the proposed amendment would unduly prejudice Defendants, and that Plaintiffs' motion was brought in bad faith. This Court agrees that the belated amendment would be improper under the standards described below.

As noted above, the operative scheduling order in this case provided a November 1, 2019 deadline for the joinder of additional parties or the amendment of pleadings. ECF 39. Plaintiff did not file the instant motion for leave to amend until close to six years later, on July 25, 2025. ECF 315. As such, Plaintiff must satisfy the good cause standard set forth in Rule 16(b)(4) before this Court will find leave to amend under Rule 15 to be appropriate.

Other cases have described the existing tension between these two federal rules. In *Nourison Rug Corp. v. Parvizian*, like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order. 535 F.3d 295, 297 (4th Cir. 2008). The Fourth Circuit noted that, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* at 298. Accordingly, the Fourth Circuit explained that the party seeking to modify the scheduling order must meet the good cause requirement of Rule 16(b)(4) before the court would consider the more liberal standard for amendment of a pleading in Rule 15(a)(2). *Id.*; *see also Cook v. Howard*, 484 Fed. App'x. 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").

To establish good cause, the party seeking to amend the scheduling order must "'show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Id.* at 815 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1522.2 (3d ed. 2010)); *see also Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (4th Cir. 2004) ("The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant. Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.' . . . 'If [the moving] party was not diligent, the inquiry should end.'") (citations and emphasis omitted); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.") (internal citations and quotations omitted).

Applying these standards, Plaintiff has failed to establish good cause for their tardy motion for leave to amend. Plaintiffs admit, with some understatement, that their motion "comes well after the deadline set forth in the Court's 2019 Scheduling Order." ECF 315-3 at 7. Thus, the Court could likely find that Plaintiffs were not diligent in themselves identifying potential class representation issues and amending their complaint accordingly prior to the set deadline. However, the Court need not reach the question of what Plaintiffs *should have* identified at earlier stages of this litigation with the exercise of proper diligence because Plaintiffs' recent action (or inaction), after *the Court identified the issue for them*, reflects that Plaintiffs did not diligently attempt to comply with the schedule, precluding a finding of "good cause" under Rule 16.

5

Plaintiffs themselves acknowledge that this Court first voiced concerns about class representation "earlier this year on the eve of the *Bezek* trial," a separate case litigated by Plaintiffs' counsel and similarly revolving around an alleged kickback scheme. ECF 317 at 1; *see also Bezek v. First Nat'l Bank of Pa.*, No. 1:17-cv-02902-SAG, ECF 239 (Feb. 7, 2025 virtual status conference) (Court raising concerns as to class representation when members of the class dealt with different loan officers than did the named plaintiffs).[1] Despite this acknowledgment, Plaintiffs argue that they have demonstrated the diligence required to warrant a finding of "good cause" by their having begun identifying additional potential class representatives "immediately after the Court raised its class representation concern *as to this case* at the May 27, 2025 telephone conference," three months later. ECF 315-3 at 7 (emphasis added); *see also* ECF 295 (May 27, 2025 telephone conference). The proposition implicit in Plaintiffs' assertion is that an assessment of a party's diligence in their identification and addressing of issues potentially warranting amendment (and modification of a schedule) need not take into account any notice of such issues that the party was given with reference to anything other than the instant case. Besides this proposition being untenable in the license it would give for a party's ignorance or indifference, its basic factual premise is incorrect here, as the May 27, 2025 conference was *not* the first time the Court had raised its class representation concern "*as to this case*." As Defendants note, *see* ECF 316 at 7, in a February 20, 2025 pre-trial conference in *Brasko v. First Nat'l Bank of Pa.*, No. SAG-20-3489, this Court expressly stated that the issue of adequacy of class representation that the Court "raised with the parties on our telephone conference the Friday before the *Bezek* trial . . . I

---

[1] "The court expressed a concern that to the extent the jury found that [the originating branch manager for the class representatives' mortgages] did not violate RESPA, then the borrowers with loans at other branches would be denied recovery even if the jury believed that their originating branch managers did violate RESPA." ECF 315-3 at 2.

6

think that the same issue may apply in the *Edmondson* case." No. 1:20-cv-03489-SAG, ECF 156 (Feb. 20, 2025 status conference).

Plaintiffs "maintain[] that it is not necessary" to add class representatives or amend the Class definition,[2] but assert that they are doing so "out of an abundance of caution" and to "respect[] the Court's statements." ECF 315-3 at 2; ECF 317 at 1-2. However, Plaintiffs chose not to address the Court's concerns after their first articulation, and instead waited for the Court to repeat itself three months later before taking any responsive action. In addition, that Plaintiffs would frame their delayed efforts in seeking leave to amend as a sort of courtesy to the Court is odd, considering the Court spoke out of concern for the preservation of certain of the *Plaintiffs'* claims.

"'[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.'" *Howard v. Inova Health Care Servs.*, 302 Fed. App'x. 166, 181 (4th Cir. 2008) (quoting *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987)). Accordingly, under these circumstances, this Court finds that Plaintiffs have demonstrated no good cause for filing their motion for leave to amend more than five months after being alerted to the Court's specific concerns regarding class representation and close to six years after the deadline provided in the Scheduling Order. And where a moving party fails to demonstrate good cause under Rule 16(b), the Court need not address the remaining Rule 15(a) factors. *See, e.g.*, *Nourison Rug*, 535 F.3d at 299 (declining to address the Rule 15(a) factors after upholding the trial court's finding of no good cause under Rule 16(b)).

---

[2] ECF 317 at 1-2. Plaintiffs argue that the one current named Plaintiff, Ms. Neal, "can adequately represent the entire class because her experience is representative of the one global kickback scheme centered around Genuine Title, with spokes extending to several ENMC branches." ECF 315-3 at 2. Plaintiffs' counsel raised a similar argument during the February 20, 2025 hearing in *Brasko* with respect to two loans at issue there, and the Court made clear its skepticism. *See* No. 1:20-cv-03489-SAG, ECF 156.

This Court alternatively notes, however, that if the Rule 15(a) factors were considered, there is no doubt that the Defendants could establish that they would suffer prejudice from this belated amendment. "Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "[t]he party opposing amendment." *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). As the Fourth Circuit explained in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, "'Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . .'". 650 F.3d 423, 439 (4th Cir. 2011) (quoting *Laber*, 438 F.3d at 427) (alteration in *Laber*). The court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller § 1487 at 701.

The relevant circumstances in the instant case include the number of new class representatives that Plaintiff proposes (five), the time and expense anticipated to be required for discovery and preparation of filings associated with the addition of each, and the timing of Plaintiffs' motion, just months from trial (and with deadlines for pretrial submissions approaching). Plaintiffs argue that they have taken and can take further actions to mitigate any prejudice that may flow to Defendants from Plaintiffs' belated attempt to amend, *see* ECF 315-3 at 6; however, this Court is persuaded by Defendants' arguments that Defendants would be unduly prejudiced if Plaintiffs' motion were granted. The nature of the proposed amendment has important implications

8

for the prejudice that may result to the opposing party. Notwithstanding Plaintiffs' arguments that "the proposed amendment does not introduce any new legal theories or claims," ECF 315-3 at 5, the addition of class representatives, as Defendants note and as Plaintiffs are well aware, entails a host of procedural steps. *See* ECF 316 at 3. The Parties' recent experience with respect to the substitution of the current class representative, Ms. Neal, is informative. On September 15, 2023, the Court confirmed that the Parties would move forward with discovery as to Neal as the class representative; however, nine months passed, with extensions of time for her deposition, a re-deposition,[3] and motions practice on Plaintiffs' Motion to Substitute Class Representative (ECF 222, ECF 225, ECF 228), before Ms. Neal was officially substituted as a class representative, on June 17, 2024. ECF 231. These same steps for five new proposed class representatives could not feasibly be completed while keeping to the Court's schedule for pre-trial submissions, conferences, and the long-awaited trial in this case.

It is clear, then, that Defendants would suffer prejudice from the late-stage amendment, providing an independent basis to deny leave to amend even under the more lenient Rule 15 standard. Thus, this Court need not address Defendants arguments regarding Plaintiffs' motion being brought in "bad faith," and will deny the requested leave to amend.[4]

---

[3] The Court recognizes that the process of substituting Ms. Neal as class representative was prolonged in part due to the need for a re-deposition of Ms. Neal based on conduct of Plaintiffs' counsel at the first deposition of Ms. Neal, conduct which became the subject of a Motion for Sanctions by Defendants that this Court granted. *See* ECF 211, ECF 213, ECF 214, ECF 216. The Court would hope that similar circumstances would not arise were the Court to grant Plaintiffs' motion and the Parties to proceed to discovery regarding the newly proposed class representatives; however, the Court's conclusion regarding potential prejudice to Defendants would remain even absent such circumstances.

[4] Nor does the Court need to address the Rule 23 and Rule 24 arguments raised by the Plaintiffs and Defendants, respectively.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to Amend the Complaint to add Party Plaintiffs and Appoint Them as Class Representatives, ECF 315, will be DENIED. A separate Order follows.

Dated: September 19, 2025

                                                             /s/
                                       Stephanie A. Gallagher
                                       United States District Judge